**Affirmed and Opinion filed May 17, 2012.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-11-00371-CR

---

**JOSEPH RODRIGUEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1235083**

---

## O P I N I O N

A jury convicted appellant Joseph Rodriguez of murder and assessed a punishment of forty years' imprisonment. Appellant appeals, arguing that the trial court erred by (1) denying appellant's requested instruction on the affirmative defense of duress during the guilt-innocence phase of the trial; and (2) sustaining the State's objections to certain questions during cross-examination of one of the State's witnesses in the punishment phase of the trial. We affirm.

BACKGROUND

In 2009, Mario Alanis and his family controlled the drug trade in an area of southwest Houston where appellant and his cousin Mario Gomez used to sell drugs. Appellant and Gomez paid the Alanis family "rent" in the amount of $2,500 per week to do so, until the Alanis family increased the "rent" to $4,000 per week. When the increased "rent" prompted appellant and Gomez to move their operation elsewhere, the Alanis family became upset.

According to appellant and his family, Alanis attempted to kidnap appellant's sister over the dispute. Appellant's father became angry when he learned about the attempted kidnapping and promised to retaliate.

Alanis and his associate were leaving an apartment complex in the neighborhood on September 20, 2009, when a silver Impala drove by and one or more of its occupants opened fire on Alanis. Alanis and his associate were shot multiple times. The gunfire also injured several occupants of a vehicle caught between the Impala and Alanis. Witnesses identified appellant and Gomez as two of the occupants of the Impala, although no witnesses could affirmatively state whether either individual held or fired a weapon.

Alanis died from his injuries, but his associate survived. The medical examiner could not determine what caliber of bullet caused any of Alanis's wounds.

Police recovered multiple .357 SIG cartridge casings and 7.62x39 millimeter[1] cartridge casings from the crime scene. Police located the Impala and discovered a .40 caliber bullet lodged in the headliner above the rear passenger's-side window that appeared to have been fired from the driver's-side backseat.

Appellant gave police a video-recorded statement in which he initially admitted being present in the driver's-side backseat of the Impala next to his father, but denied

---

[1] The 7.62x39 millimeter cartridge casings were of a type that could be fired from an AK-47 or a SKS rifle.

having a firearm or any knowledge that a shooting was about to take place. He told police that after his father found out that the Alanis family attempted to kidnap appellant's sister over the "rent" dispute, their father "got all crazy," called appellant a "pussy," and "forced" him to go with his father in the Impala. Appellant told police that his father brought an AK-47 and a .40 caliber pistol into the Impala, and that appellant was "positive" his father was the only person in the vehicle with any firearms. Appellant claimed that he was not even looking in Alanis's direction when his father began firing the AK-47 out of the rear passenger's-side window, and denied that appellant's car door ever opened or that gunfire came out of his side of the vehicle.

When police revealed to appellant that they recovered two types of cartridge casings from the crime scene, appellant admitted, "I had a gun," and stated, "I lied to you, and I'm sorry, sir." He maintained that neither he nor Gomez, who had been sitting in the front passenger seat, fired any weapons, but stated that his father grabbed and began firing appellant's .40 caliber pistol when the AK-47 jammed.

When police showed appellant a surveillance video from a nearby laundry mat that captured the shooting, appellant again changed his story and stated that Gomez had brought a .357 caliber Glock pistol that he fired from the vehicle, and that appellant—not his father—fired the .40 caliber pistol. When police told appellant it appeared that the surveillance video showed an individual opening the driver's-side backseat car door and getting out of the vehicle to fire a weapon, appellant admitted he opened the door but denied exiting the vehicle or firing a weapon in that manner.[2] He stated that when his father's AK-47 jammed, he "shot inside the car" once in the same direction his father had been shooting, and that the bullet went into the headliner of the Impala above the rear passenger's-side window. Appellant claimed that that he did not see Alanis or know where appellant was supposed to be aiming.

Appellant and Gomez both were indicted and tried together for murder. Over

---

[2] The issue of whether the surveillance video showed someone exiting the vehicle to fire over the trunk at Alanis, or whether it merely showed a door opening, was disputed at trial.

3

appellant's objection, the trial court admitted appellant's video-recorded statement into evidence. The jury was instructed that they could find appellant and Gomez guilty based on a theory of party liability, and the jury convicted both appellant and Gomez of murder.

During the punishment phase of the trial, the State introduced evidence that appellant and Gomez had shot and killed two individuals two days prior to the murder of Alanis. Police recovered multiple .40 caliber and .357 cartridge casings from that crime scene. The State introduced additional video-recorded statements given to police by appellant, in which he initially denied any knowledge or participation in the shooting but suggested his father may have been involved. He later admitted his participation and stated that he and Gomez believed one of the two individuals had been reaching for a weapon when first Gomez, and then appellant opened fire on the individuals. During the defense's cross-examination of one of the officers who investigated the shooting, the trial court sustained the State's objections to testimony regarding certain self-defense related issues. The trial court denied appellant and Gomez's requested instruction on self-defense, and the jury assessed a punishment of 40 years' imprisonment for both appellant and Gomez.

Appellant argues on appeal that the trial court erred by (1) denying appellant's requested instruction on the affirmative defense of duress during the guilt-innocence phase of the trial; and (2) sustaining the State's objections to certain questions during cross-examination of the State's witness in the punishment phase of the trial.

ANALYSIS

## I.      Instruction on Duress

Appellant urges in Issue 1: "The main theory of the appellant's defense was that, although he actively participated in the crime, he was compelled to do so by his father, a dangerous member of the Texas Syndicate who was angered when Alanis drew innocent members of the appellant's family into the dispute over 'rent.'" Appellant contends that evidence showing appellant was afraid of his father and felt "forced to go" along with the

4

murder of Alanis "raised the issue of the affirmative defense of duress," and that the trial court should have granted appellant's request for a jury instruction regarding duress.

"It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent . . . serious bodily injury to himself or another." TEX. PEN. CODE ANN. § 8.05(a) (West 2011).

The affirmative defense of duress is, on its face, a confession-and-avoidance or "justification" type of defense. This is so because "this justification, by definition, does not negate any element of the offense, including culpable intent; it only excuses what would otherwise constitute criminal conduct." *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (defining Good Samaritan defense as confession-and-avoidance or "justification" defense); *see also Juarez v. State*, 308 S.W.3d 398, 401–03 (Tex. Crim. App. 2010) (defining defense of necessity as confession-and-avoidance or "justification" defense).

The confession-and-avoidance doctrine requires appellant to first admit that he "engaged in the proscribed conduct" by admitting to all elements of the underlying offense, then claim that his commission of the offense is justified because of other facts. *See Juarez*, 308 S.W.3d at 401–03 (discussing confession-and-avoidance doctrine with respect to affirmative defenses of necessity, self-defense, and Good-Samaritan defense). This is a product of the nature of the defense. "One cannot establish that an act is justified without first identifying, or admitting to the commission of, the predicate act." *Maldonado v. State*, 902 S.W.2d 708, 712 (Tex. App.—El Paso 1995, no pet.); *see also Allen v. State*, 971 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1998, no pet.) (appellant was not entitled to instruction regarding defense of necessity because she failed to admit to committing the offense); *Maldonado*, 902 S.W.2d at 712 (appellant was not entitled to instruction regarding defense of necessity because he did not testify "or otherwise admit his crimes"); *Bernal v. State*, 647 S.W.2d 699, 706 (Tex. App.—Dallas 1983, no pet.) (appellant was not entitled to instruction regarding defense of duress because he denied having participated in underlying offense).

5

A defendant's failure to testify, stipulate, or otherwise proffer defensive evidence admitting that he "engaged in the proscribed conduct" prevents the defendant from benefitting from the defense of duress. *See Shaw*, 243 S.W.3d at 659 (defendant is entitled to jury instruction on such a defense only "when the defendant's defensive evidence essentially admits to every element of the offense, including the culpable mental state, but interposes the justification to excuse the otherwise criminal conduct" (emphasis omitted)); *Hubbard v. State*, 133 S.W.3d 797, 801–02 (Tex. App.—Texarkana 2004, pet. ref'd) (defendant not entitled to defensive instruction on justification unless he or she "sufficiently admits conduct underlying the offense and provides evidence justifying a defensive instruction"); *see also Juarez*, 308 S.W.3d at 404–05 (confession-and-avoidance admission requirement "trumps" the general rule that a trial court must instruct the jury as to a defensive issue raised by the evidence without respect to "whether such evidence was produced by the prosecution or the accused" (internal quotation omitted)).

We disagree with appellant that he sufficiently admitted that he "engaged in the proscribed conduct" because he admitted participation in the offense at one point in his video-recorded statement, which was introduced into evidence by the State over appellant's objection and after the trial court had overruled appellant's motion to suppress. "That the prosecutor tendered evidence of guilt does not permit one to rationally deduce that the defendant admits to the veracity of the evidence tendered," much less the veracity of one of multiple conflicting accounts reflected in that evidence. *See Timms v. State*, No. 07-09-0001-CR, 2010 WL 1630731, at *2 (Tex. App.—Amarillo Apr. 22, 2010, pet. ref'd) (mem. op., not designated for publication).

Because appellant failed to testify, stipulate, or otherwise proffer defensive evidence admitting his commission of the underlying offense, we conclude that he was not entitled to a jury instruction on the affirmative defense of duress. We overrule appellant's Issue 1.

## II.    Self-Defense Evidence

Appellant argues in Issue 2 that the trial court erred during the punishment phase

of the trial by excluding evidence that would have shown appellant and Gomez acted in self-defense when they shot two other individuals two days before the Alanis murder. Appellant argues that the State's objections—that the questions called for a legal conclusion, inadmissible hearsay, and irrelevant testimony—were based on evidentiary rules that "infring[e] upon a weighty interest of the accused," and are "arbitrary" or "disproportionate to the purposes they are designed to serve" because they deprived appellant of a meaningful opportunity to present a complete defense in violation of his federal constitutional rights. *See Holmes v. South Carolina*, 547 U.S. 319 (2006).[3]

To preserve a complaint for appellate review, the record must show that the complaint was presented to the trial court "with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context." TEX. R. APP. P. 33.1(a)(1)(A). "Under this rule, an objection must be both timely and specific, alerting the trial court to any and every legal basis upon which the appellant should desire to predicate a claim later on appeal." *Leza v. State*, 351 S.W.3d 344, 361 n.67 (Tex. Crim. App. 2011). To complain about the exclusion of certain evidence on appeal, therefore, an appellant must demonstrate that he preserved his argument by offering the evidence during trial, and by making the trial court aware of the

---

[3] The trial court sustained the State's objection that the following question calls for a legal conclusion:

> Q. But you do agree that a person[,] based upon your training and experience in the cases that you have handled[,] does have the right to resort to self-defense, right?

The trial court sustained the State's relevance-based objections to the following questions:

> Q. Have you worked cases before that involve evidence of self-defense?
>
>      *           *           *
>
> Q. Have you ever talked to a prosecutor in a case that you have investigated that involved allegations of self-defense?
>
>      *            *           *
>
> Q. Some people [involved in shootings] are not guilty [of murder?]

The trial court sustained the State's hearsay-based objection to the following question:

> Q. Did you ever talk to any witnesses who contradicted their statements of self-defense?

substance of the evidence and the basis of its admission. *See* TEX. R. APP. P. 33.1; TEX. R. EVID. 103(a)(2); *Leza*, 351 S.W.3d at 360–61.

At trial, appellant failed to alert the trial court in any way that the trial court's evidentiary rulings would violate any federal constitutional right. Because the only argument that the appellant now pursues on appeal with respect to this evidence was not preserved by a contemporaneous objection, and because appellant fails to argue that the constitutional right upon which he relies is—or that we should hold it to be—immune to ordinary principles of procedural default, we overrule appellant's Issue 2 without reaching the merits. *See Leza*, 351 S.W.3d at 360–61 (declining to reach appellant's argument that trial court "committed error of a federal constitutional dimension" under *Holmes* regarding exclusion of out-of-court statement under Texas Rules of Evidence because appellant failed to raise federal constitutional argument to trial court); *see also Piper v. State*, No. 14-07-00409-CR, 2008 WL 2133416, at *2 (Tex. App.—Houston [14th Dist.] May 20, 2008, pet. ref'd) (mem. op., not designated for publication) (same).

## CONCLUSION

Having overruled both appellant's issues on appeal, we affirm the judgment of the trial court.

/s/    Sharon McCally
       Justice

Panel consists of Chief Justice Hedges and Justices Jamison and McCally.

Publish — TEX. R. APP. P. 47.2(b).

8