

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00030-CR
### No. 10-12-00031-CR
### No. 10-12-00032-CR
### No. 10-12-00033-CR
### No. 10-12-00034-CR
### No. 10-12-00035-CR

**BOBBY MAHAN,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

### From the 77th District Court
### Limestone County, Texas
### Trial Court Nos. 12605-A, 12606-A, 12607-A,
### 12608-A, 12609-A and 12610-A

## MEMORANDUM OPINION

In Cause No. 10-12-00030-CR, the jury convicted Bobby Mahan of the offense of burglary of a habitation and assessed punishment at 20 years confinement and a $2,500 fine. In Cause No. 10-12-00031-CR, the jury convicted Bobby of the offense of tampering with physical evidence and assessed punishment at 2 years confinement and

a $2,500 fine. In Cause No. 10-12-00032-CR, the jury convicted Bobby of burglary of a habitation and assessed punishment at 5 years confinement and a $2,500 fine. In Cause Nos. 10-12-00033-CR, 10-12-00034-CR, and 10-12-00035-CR, the jury convicted Bobby of aggravated assault with a deadly weapon and assessed punishment at 20 years confinement and a $2,500 fine for each offense. We affirm.

## Sufficiency of the Evidence

In each cause number, Bobby challenges the sufficiency of the evidence to support her conviction. The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), *cert den'd*, --S.Ct. --, 2012 WL 509637, U.S.L.W. 3667 (June 4, 2012).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the

prosecution and therefore defer to that determination. *Jackson v. Virginia*, 443 U.S. 307, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

**Facts**

Luease Sheppard lives on Highway 84 a few miles outside of Mexia, Texas. Her grandson, Courtney Durham, his daughter Diamond, and Diamond's mother, Kelly Bain were living with her at the time of the offenses. Luease's grandson, Chris Sheppard, lived in the house next door, which was about fifty yards away. On June 19, 2011, Bobby Mahan and her son, Christopher Mahan, went to Luease's home. Luease testified that Christopher Mahan broke out a window in her home. Kelly testified that after he broke the window, Christopher said, "Where is he at?" Kelly said that Christopher left, and she called 911. Kelly and Luease both testified that they saw Bobby Mahan sitting in the driver's seat of her pickup and that she never left the vehicle.

Christopher left Luease's house and went next door to Chris Sheppard's home. Sheppard testified that he was in the bathroom when he heard the back door "just fling open" and he then heard screaming and yelling. When he stepped into the living room,

Sheppard saw Christopher with a gun in one hand and a hammer in the other. Christopher asked, "Where's Courtney? … Where is he at?"

Lonnie Hall was in Chris Sheppard's home, and he told Christopher that Courtney was at Luease's home. Christopher responded, "I done killed everybody else up there. If you lie to me again, I'm going to kill you." Christopher shot the television hanging on the wall and then pointed the gun at Lonnie. Chris Sheppard started screaming because he thought Christopher was going to shoot Lonnie. Christopher then turned the gun toward Chris Sheppard and started shooting. Chris Sheppard ran from the house, and he heard more gunshots coming from the house. Chris Sheppard went to Luease's house for help.

Lonnie testified that Christopher shot at Sheppard as Sheppard ran from the house. Lonnie went for Christopher's gun, and they both fell. Lonnie stated that Christopher hit him twice with the hammer, and then shot him twice in the leg. As they continued to struggle for the gun, Christopher pulled out a pocket knife and cut Lonnie across the neck and also on the finger. Lonnie managed to escape from Christopher and ran out of the front door. Lonnie testified that Christopher came out of the back door of the house as Courtney Durham was walking toward the house. Christopher then shot Courtney multiple times. Lonnie stated that Christopher calmly walked to a vehicle that was waiting for him and left the scene.

Chris Sheppard testified that he was yelling for Kelly Bain to call 911. Sheppard saw Bobby Mahan sitting in her truck watching everything take place. Chris Sheppard saw Lonnie run from the house and Christopher come out from the back of the house.

Christopher was reloading his gun, and Courtney was walking toward Chris Sheppard's house. When Christopher looked up and saw Courtney, he raised the gun and shot him. Sheppard stated that Christopher did not stop shooting "until the gun was empty." Sheppard testified that Mahan was in the driver's seat of the truck waiting for Christopher. She drove along the shoulder of the road, stopped to pick up Christopher, and then drove away.

Courtney testified that on June 19, 2011, he was visiting a neighbor who lived two houses down from his grandmother, Luease. Sheppard's house was in between his grandmother's house and the neighbor's house. Kelly called him and said that Christopher had broken a window at his grandmother's house. Courtney left and began walking to his grandmother's house. He saw Lonnie and asked him what was wrong. Courtney then saw Christopher with a gun pointed toward him. Courtney said, "Don't shoot me 'cause I got a little girl. I got a family." Christopher said, "You dead" and started pulling the trigger. Courtney testified that he was shot twelve times. Courtney saw Bobby Mahan driving the vehicle, and he thought she might run over him or shoot him. Courtney stated that Bobby pulled up and told Christopher "come on." Christopher calmly walked to the truck, and they left. Courtney was in the hospital for three months as a result of his injuries.

Bobby Mahan testified that she was taking a nap on June 19, 2011, when Christopher woke her and said he needed to go somewhere. Bobby said that she got in the passenger seat and dozed off while Christopher drove. When Bobby woke up, they were parked in Luease's yard. Christopher was on the front porch talking to Diamond

and Luease. The next time Bobby looked up, Christopher was between Luease's house and Sheppard's house. Bobby said that she got out of the truck and went to the door of Luease's house. Diamond opened the door and Luease and Kelly were inside of the house. Bobby heard gunshots from Sheppard's house, and she went and got back in her truck. Bobby testified that she drove close to Sheppard's house and she saw Christopher with a gun. Bobby then testified that she saw Christopher shoot Courtney.

Bobby testified that Christopher came and got in the truck and told her to drive. Bobby drove until Christopher told her to stop. After Bobby stopped, Christopher came to the driver's side of the truck and got out a gun case. He put the gun in the case and walked into the woods. When he returned, he did not have the gun. Christopher told Bobby to drive to Mexia because he was going to turn himself in. Bobby drove to Mexia, and let Christopher out of the truck. She then went to her daughter's house. Bobby and her daughter later went to a convenience store where she thought Christopher might be. There were several law enforcement vehicles at the convenience store, and Christopher was in the back of a sheriff's vehicle. Bobby spoke to the sheriff and informed him that she was Christopher's mother.

Sergeant Brett New with Limestone County Sheriff's Office testified that he spoke with Mahan at the convenience store. Bobby told Sergeant New that she drove Christopher to Luease's house. Bobby said she was on the porch, when a man ran out of the house yelling, "He's got a gun." Bobby went back to her truck and drove along the side of the road. She saw Christopher, and he was carrying a gun and had blood on him. Christopher jumped in the truck and told her to leave. She drove to a cemetery,

and Christopher got out of the truck and retrieved a black gun case from the bed of the truck. Christopher walked into the woods and returned without the gun. Sergeant New took Bobby to the sheriff's office where Bobby gave a written statement. In her written statement, Bobby did not clearly state that she drove to Luease's house. She stated that she and Christopher drove out there together.

**Parties to Offenses**

Section 7.01 of the Texas Penal Code provides:

> (a) A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.
>
> (b) Each party to an offense may be charged with commission of the offense.
>
> (c) All traditional distinctions between accomplices and principals are abolished by this section, and each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice.

TEX. PENAL CODE ANN. § 7.01 (West 2011). A person is criminally responsible for an offense committed by the conduct of another if:

> (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense; or
>
> (3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

TEX. PENAL CODE ANN. § 7.02 (a) (West 2011).

Because Bobby Mahan is not the primary actor, the State must prove conduct constituting an offense, plus an act committed by Bobby with intent to promote or assist such conduct. *See Beier v. State*, 687 S.W.2d 2, 3 (Tex. Crim. App. 1985). Bobby does not challenge the sufficiency of the evidence to show that Christopher committed the charged offenses. Bobby argues that the evidence is insufficient to show that she acted as a party for each offense in which she was convicted.

In determining whether an individual is a party to an offense, the court may look to events occurring before, during, and after the commission of the offense, and may rely on actions of the defendant that show an understanding and common design to do the prohibited act. *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985).

Prior to the offenses, Bobby Mahan and Christopher Mahan lived in a house owned by Kelly. Bobby and Christopher did not pay rent, but were responsible for the utilities. Kelly asked Bobby and Christopher to move out of the house. On June 18, the day before the offenses, Bobby drove Christopher to Luease's residence, and Christopher talked to Courtney about the electric bill for Kelly's house. Courtney stated that the electricity to the house had been turned off, and he asked Christopher to pay half of the bill based upon the agreement between the Mahans and Kelly. Courtney testified that Christopher gave him money for the bill. After leaving Luease's house, Bobby and Christopher and got into an argument. Christopher threatened to hit Bobby's truck with an axe.

On June 19, Christopher and Bobby returned to Luease's house. Bobby originally told Sergeant New that she drove to Luease's house, but at trial she testified that Christopher drove. There was evidence at trial that Bobby was in the driver's seat of the vehicle shortly after arriving at the residence. The factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d at 461.

Bobby waited in the truck while Christopher broke out the window of Luease's house looking for Courtney. Bobby remained in the truck while Christopher walked to Sheppard's home carrying a gun and a hammer. After hearing gunshots, Bobby drove on the shoulder of the road toward Chris Sheppard's house. She saw Christopher shoot Courtney, and she drove to the area where Courtney was lying on the ground to pick up Christopher. Courtney testified that Bobby"told [Christopher] to come on." The evidence shows that Bobby and Christopher "calmly" left the scene "like nothing had happened." Bobby drove Christopher to the cemetery where he disposed of the gun. She then took him to Mexia and let him out of the truck.

It is well settled that the mere presence of an accused at the scene of an offense is not alone sufficient to support a conviction as a party; however, it is a circumstance tending to prove guilt which, combined with other facts, may suffice to show that the accused was a participant. *Valdez v. State*, 623 S.W.2d 317, 321 (Tex. Crim. App. 1979). Further, while flight alone will not support a guilty verdict, evidence of flight from the scene of a crime is a circumstance from which an inference of guilt may be drawn. *Id.*

The jury heard evidence that Bobby assisted Christopher in arriving at the scene, fleeing the scene, and disposing of the weapon. The testimony showed that Bobby's demeanor was calm and that she did not appear surprised by the offenses. In a circumstantial evidence case, it is unnecessary for every fact to point directly and independently to the guilt of the accused; rather, it is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Viewing all of the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found that Bobby acted with intent to promote or assist the commission of the offenses and aided Christopher in committing the offenses of burglary of a habitation, aggravated assault, and tampering with physical evidence. We overrule Bobby's first issue on appeal in each of the six cause numbers.

In Cause No. 10-12-00031-CR, Bobby brings a second issue in which she argues that the trial court erred in denying her requested jury instruction. For the offense of tampering with physical evidence, Bobby requested that the jury be instructed on the defensive theory of duress. It is an affirmative defense to prosecution that the actor engaged in the proscribed conduct because he was compelled to do so by threat of imminent death or serious bodily injury to himself or another. TEX. PENAL CODE ANN. § 8.05 (a) (West 2011).

The affirmative defense of duress is, on its face, a confession-and-avoidance or "justification" type of defense. *Rodriguez v. State*, 368 S.W.3d 821,824 (Tex. App.—Houston [14th Dist.] 2012, no pet). The confession-and-avoidance doctrine

requires the defendant to first admit that she "engaged in the proscribed conduct" by admitting to all elements of the underlying offense, then claim that her commission of the offense is justified because of other facts. *Id.* A defendant's failure to testify, stipulate, or otherwise proffer defensive evidence admitting that she "engaged in the proscribed conduct" prevents the defendant from benefitting from the defense of duress. *Rodriguez v. State*, 368 S.W.3d at 825. Because Mahan did not admit that she engaged in the offense of tampering with physical evidence, she was not entitled to an instruction on duress. We overrule her second issue in Cause No. 10-12-00031-CR.

We affirm the trial court's judgments.


AL SCOGGINS
Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
Affirmed
Opinion delivered and filed October 25, 2012
Do not publish
[CR25]