

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-22-00300-CR

---

GERALD ANTHONY MORGAN, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 78th District Court
Wichita County, Texas[1]
Trial Court No. DC78-CR2020-0381, Honorable Meredith Kennedy, Presiding

---

October 23, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

Gerald Anthony Morgan, Appellant, appeals from a judgment of conviction for invasive visual recording.[2]  We affirm.

---

[1] This appeal was transferred to this Court from the Second Court of Appeals by docket equalization order of the Supreme Court of Texas.  See TEX. GOV'T CODE ANN. § 73.001.

[2] See TEX. PENAL CODE ANN. § 21.15.

BACKGROUND

In 2019, Appellant was married to Mari Morgan and working as a deputy sheriff in the Wichita County Sheriff's Office. Mari's seventeen-year-old daughter, "Candace,"[3] lived with the couple and attended Rider High School in Wichita Falls. At times, Appellant and Mari[4] would discipline Candace by confiscating her cell phone. In October of 2019, while in possession of Candace's phone, Appellant discovered an explicit self-portrait photograph ("selfie") of Candace in the photo gallery on the phone. Candace was completely nude in the photograph, and her breasts and pubic area were visible. Appellant sent a copy of the photograph from Candace's phone to himself via email but did not mention the photograph to Mari or Candace.

The email account linked to Candace's cell phone was her Wichita Falls ISD account. When Appellant emailed the photograph, the school district's content-monitoring system flagged the transmission due to sexual content and alerted school personnel. Candace was summoned to the assistant principal's office and notified that an explicit photograph had been sent from her school email account. Candace was unaware of who sent it. School personnel also informed Mari of the incident. Mari contacted Candace, who maintained that she did not send the email. Mari then discussed the incident with Appellant. He did not reveal that he had seen the photograph or that he had emailed himself a copy of it. About a week later, Mari informed Appellant that the school was investigating to determine the recipient of the photograph. Appellant then

---

[3] In order to protect the complainant's identity, we will use an alias throughout this memorandum opinion. *See generally* TEX. R. APP. P. 9.8.

[4] We refer to Mari by her first name to avoid confusion with Appellant.

acknowledged emailing the photograph to himself and told Mari that he "was just not thinking." Appellant did not reveal to Mari any purpose he had in acquiring the photograph. He did not discuss the photograph with her or with Candace.

Appellant was indicted for the offense of invasive visual recording. The indictment alleged that Appellant, on or about October 31, 2019,

> did then and there . . . promote a photograph and photograph reproduction, of the intimate area of [Candace], hereafter styled complainant, by issuing and providing and transferring and transmitting and emailing the photograph, without the consent of the complainant and with intent to invade the privacy of the complainant, and the complainant had a reasonable expectation of privacy that the photograph was not subject to public view.

To convict Appellant, the State was required to prove, among other things, that he promoted the photograph without Candace's consent and with intent to invade her privacy. See TEX. PENAL CODE ANN. § 21.15(b)(3).

Appellant's defense at trial was that, while he intentionally accessed Candace's phone, he did not do so with the intent to invade her privacy. He sought to introduce evidence that Candace had been engaged in inappropriate behavior, including using drugs and being involved in an intimate relationship with a married man. During his opening statement, Appellant's counsel stated that Appellant "didn't mean to invade [Candace's] privacy" but that "she was invading her own privacy and intended to do so with that picture." He continued, "I think the evidence is going to show that she was involved with a married man at her work—" at which point the State objected. Outside the presence of the jury, the State argued that Candace's romantic relationship was not relevant. Appellant's counsel responded, "Your Honor, it is relevant, and it goes to the

3

defensive theory in this case. The State is trying to . . . ask the Court to deny the defendant his defensive theory, which is absolute error and the —." The trial court then asked what that defensive theory was, and Appellant's counsel replied, "That he was looking at the phone to see who was selling her drugs." The State objected that such evidence was not relevant, arguing that the case is about Appellant transmitting the photograph, not searching the phone. Appellant also sought to elicit testimony regarding why Candace took the photograph, arguing that "[i]t goes to [Appellant's] intent." The State responded that Candace's intent in taking the photograph was not relevant to the issue of Appellant's intent in transmitting it. The trial court agreed and instructed Appellant's counsel that he must approach the bench before asking questions about Candace having a drug dealer or being involved with a married man.

Mari testified that she had checked Candace's phone in the past because of her concerns about Candace's behavior. Mari said that Candace had a boyfriend she "did not care for." When Mari informed Appellant of the explicit photograph sent through Candace's school email, he responded that "he thought that she was sending things like that . . . ." Mari was asked if she "ever consider[ed] that [Candace] might be sending that picture to somebody," and the State again objected that it was not relevant whether Candace sent the photograph to anyone. Outside the presence of the jury, Appellant's counsel argued that Candace's past behavior was evidence that Appellant did not intend to violate her privacy:

> The Court: And again, I'm going to say, so follow me, follow me very carefully, whether or not she previously sent a photo to someone does not necessarily open the door to the privacy issue of I have no privacy in this anymore.

4

Counsel: It open[s] the doors as to whether or not he intended to invade her privacy.

The Court: And where's the case law that says that?

Counsel: Well, Your Honor, that's the allegation.

. . .

The Court: But her intent in taking that photo is not relevant to his intent.

Counsel: Your Honor, there is a connection.

. . .

The Court: So where's the case law that says his intent not to invade her privacy is based on the fact that she was sending this to other people and it was a disciplinarian thing? . . . So unless you want to present me with some case law that supports your theory as to his intent, I'm not going to let you shame this victim with her conduct.

Appellant's counsel again argued that Candace's past conduct "was the very reason why this witness and [Appellant] were looking at the phone in the first place." Following further discussion, the trial court sustained the State's objection. Appellant made a bill of exception in which Mari testified regarding Candace's suspension from school for vaping marijuana and her relationship with her boyfriend. Mari testified that she had looked at Candace's phone in the past and had not found anything that she thought was inappropriate.

Candace testified next. She testified that Appellant and her mother would take her phone away from her when she was grounded and that it happened often. She assumed that was when the photograph was discovered. She also testified that she did not intend for anyone else to see the photograph, that she did not send the photograph to anyone,

and that she did not give consent for anyone else to send it. She testified that Appellant never discussed the photograph with her or told her that he had seen it.

A jury found Appellant guilty and assessed punishment at 180 days' confinement and a $5,000 fine. This appeal followed.

## ANALYSIS

On appeal, Appellant does not challenge the sufficiency of the evidence supporting his conviction. He asserts that the trial court's restrictions on cross-examination barred him from presenting his defense at trial and created a false impression through the testimony that reached the jury, thereby denying him of his constitutional rights.

A trial court's decision to exclude evidence is reviewed under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when its decision falls outside the zone of reasonable disagreement. *Id.* The right to cross-examination is not unqualified. *Id.* at 909. Trial judges have "wide latitude" to restrict cross-examination to address concerns of "harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only marginally relevant." *Id.* at 910 (citations omitted). Even so, limits on cross-examination should not be so restrictive that they prohibit a defendant from presenting a vital defensive theory. *Id.* The trial court has the discretion to determine what level of examination will permit a defendant to muster the evidence needed to make a defensive argument. *See id.*

Appellant contends that by not being able to hear more about Candace's behavioral issues, the jury was left with the impression that he had no legitimate reason

6

to search and "preserve evidence" from her phone.[5]  More specifically, he claims that the trial court's denial of his ability to fully cross-examine certain witnesses prevented him from presenting a defense; violated his rights to compulsory process, confrontation, and effective assistance of counsel; compelled a waiver of his right to remain silent; and denied him his right to a fair trial.  In response, the State asserts that Appellant waived these complaints by not raising them before the trial court.  It also claims that the trial court did not abuse its discretion in excluding the evidence and that any error in the exclusion was harmless.

We first address the State's claim that Appellant failed to preserve the constitutional complaints on which he predicates his appeal.  To preserve a complaint for appellate review, the record must show that the party brought the complaint to the trial court's attention by making a timely request, objection, or motion and that the trial court ruled on the request, objection, or motion.  *See* TEX. R. APP. P. 33.1(a).  Constitutional complaints must be presented to the trial court to be preserved for appellate review.  *See Golliday v. State*, 560 S.W.3d 664, 670 (Tex. Crim. App. 2018).  An objection at trial that does not comport with the complaint on appeal presents nothing for review.  *Chambers v. State*, 903 S.W.2d 21, 32 (Tex. Crim. App. 1995).

On appeal, Appellant advances the argument that the trial court's exclusion of evidence created a false impression "in derogation of his rights under the First, Fifth, Sixth, and [Fourteenth] amendments of the federal constitution and Article, I Section 10,

---

[5] We note that Appellant did not argue to the trial court that his intent in transferring the photograph to himself was to "preserve evidence," but he advances that contention on appeal.

7

19 and 29 of the Texas constitution." However, at trial, Appellant did not clearly advise the trial court that its evidentiary ruling would violate any of his constitutional rights. Rather, Appellant repeatedly urged that evidence of Candace's conduct was relevant as to why Appellant was looking at her phone and why he lacked intent to invade her privacy. Based on that argument, the trial judge could not be expected to perceive that Appellant was making a constitutional claim. *See, e.g., Golliday*, 560 S.W.3d at 671 (where appellant "did not clearly articulate a constitutional basis" for admission of excluded evidence, he did not preserve constitutional claim for appeal); *Reyna v. State*, 168 S.W.3d 173, 179–80 (Tex. Crim. App. 2005) (appellant forfeited appellate review of his Sixth Amendment Confrontation Clause argument due to failure to present that legal basis to trial court); *Rodriguez v. State*, 368 S.W.3d 821, 826 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (appellant did not preserve constitutional claim where he waited until appeal to argue trial court's exclusion of defensive evidence violated his constitutional right to present a complete defense). A general appeal to relevance, or a broad claim that the jury needs a broader understanding of events "does not adequately articulate a constitutional basis sufficient to preserve the argument for appellate review." *Golliday*, 560 S.W.3d at 671. Because Appellant did not adequately articulate a constitutional basis supporting the admission of the excluded evidence, he did not preserve his constitutional claims for appeal.

However, broadly construing Appellant's arguments, we conclude that his complaints related to the relevance of the excluded evidence have been preserved for our review. On the record before us, we cannot say that the trial court abused its discretion by excluding the evidence on relevance grounds. The constitutional right to

8

present a complete defense is "qualified by the requirement that the evidence be relevant and not excluded by an established evidentiary rule." *Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010). "A bedrock condition of admissibility of evidence in any legal contest is its relevance to an issue in the case—that is to say, its tendency to make a fact of consequence to determination of the action more or less probable." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012).

Appellant's counsel asserted at trial that his defensive theory was "[t]hat he was looking at the phone to see who was selling [Candace] drugs." As he argued in closing, "[H]e did not intend to invade the privacy of [Candace]. He intended to find out what's going on." Appellant offered the evidence of Candace's specific prior misdeeds in an effort to show that his reasons for discovering and transmitting the photograph were disciplinary, not "lascivious."

The crux of this case is whether Appellant transmitted the photograph of Candace with intent to invade her privacy.[6] Appellant's acts of accessing and viewing the contents of Candace's phone are not prohibited by the statute. Moreover, the evidence indicated that Appellant and Mari owned and exercised supervisory authority over Candace's phone; they both had the password to the phone and occasionally inspected it. It is not Appellant's intent in searching Candace's phone that is at issue, but rather his intent in sending a copy of the photograph to himself.

---

[6] Appellant does not contend that Candace lacked a reasonable expectation of privacy in the photograph.

9

In support of his defensive theory that he lacked intent to invade Candace's privacy, Appellant sought to introduce evidence that Candace had engaged in risky and unhealthy behaviors. The testimony Appellant elicited outside the presence of the jury, and which was excluded by the trial court, included the following: in September of 2019, Candace had been hospitalized for overdosing on a marijuana vape pen at school; Candace had been suspended from school as a result of her use of the vape pen; while at the hospital, Candace informed Mari that she was sexually active; Candace was in a sexual relationship with "Bryson," who was abusive toward her; Mari discovered that Candace had a Snapchat application, or "app," on her phone; Mari forbade Candace from having a Snapchat account; Candace called Appellant "Dad"; and in 2021 Candace told Mari that she took the photograph because "she was making sure there was not liquid coming out. She thought she had an infection."[7] When seeking admission of the testimony, Appellant's counsel argued, "The facts are that [Appellant] was intentionally getting into the phone, but not for the purposes of invading her privacy. It was for the purpose of determining whether she was engaging in conduct that she shouldn't engage in, and it was more of a discipline action."

Invasion of privacy occurs when there is an "intentional intrusion, physically or otherwise, upon another's solitude, seclusion, or private affairs, which would be highly offensive to a reasonable person of ordinary sensibilities." *Ex parte Metzger*, 610 S.W.3d 86, 102 (Tex. App.—San Antonio 2020, pet. ref'd); *see also Krenzer v. State*, Nos. 05-21-00444-CR, 05-21-00456-CR—05-21-00459-CR, 2022 Tex. App. LEXIS 8892, at *8–9

---

[7] Appellant does not present any argument explaining how this evidence is relevant to his intent in sending the photograph to himself.

10

(Tex. App.—Dallas Dec. 6, 2022, pet. ref'd) (mem. op., not designated for publication). Under Rule 401 of the Texas Rules of Evidence, evidence is only relevant if "the fact is of consequence in determining the action." TEX. R. EVID. 401(b).

In our view, the trial court's decision to exclude the proffered evidence does not fall outside the zone of reasonable disagreement. The dissent argues that the excluded evidence would support the jury's inferences that Appellant transmitted the photograph because Candace was engaging in risky behavior and was using Snapchat to conceal her conduct, suggesting that Appellant had justifiable concerns about Candace's behavior at the time he transferred the image to himself. However, the excluded evidence does not indicate how Appellant's acquisition of his own copy of the photograph would further any legitimate disciplinary purpose.

For the reasons discussed above, we cannot conclude that the trial court abused its discretion in determining that evidence of Candace's behavioral issues was not relevant. Accordingly, we overrule Appellant's issue on appeal.

## CONCLUSION

For the forgoing reasons, we affirm the judgment of the trial court.


Judy C. Parker
Justice


Do not publish.

Yarbrough, J., dissenting.

11