**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMSC-008**

**Filing Date: April 23, 2020**

**No. S-1-SC-36865**

**STATE OF NEW MEXICO,**

Plaintiff-Petitioner,

v.

**CRYSTAL ORTIZ,**

Defendant-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Stan Whitaker, District Judge**

Released for Publication August 11, 2020.

Hector H. Balderas, Attorney General
Walter M. Hart III, Assistant Attorney General
Santa Fe, NM

for Petitioner

Bennett J. Baur, Chief Public Defender
John Charles Bennett, Assistant Appellant Defender
Albuquerque, NM

for Respondent

**OPINION**

**NAKAMURA, Chief Justice.**

**{1}**     If a criminal defendant wants a duress instruction then they must admit that they committed the criminal act. *See Esquibel v. State*, 1978-NMSC-024, ¶ 9, 91 N.M. 498, 576 P.2d 1129, *overruled on other grounds by State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175.  Defendant Crystal Ortiz was convicted of four crimes, two of which were related to her driving her vehicle into another person.  At her trial, Ortiz requested the jury be instructed to consider whether she acted under duress when she struck the person.  However, because she testified at trial that she hit the person

accidentally, the district court denied her duress instruction. The Court of Appeals reversed and determined that she was entitled to a duress instruction. *State v. Ortiz*, 2018-NMCA-018, ¶ 16, 412 P.3d 1132. We reverse the Court of Appeals.

## I.  BACKGROUND

**{2}**     A basic statement of the facts and procedural history of this case is provided below. Additional facts are provided as necessary in the discussion section.

**{3}**     A grand jury indicted Ortiz on five counts. The crimes charged were (1) causing great bodily injury by vehicle (DWI), a violation of NMSA 1978, Section 66-8-101(B), (C) (2004, amended 2016); (2) aggravated battery with a deadly weapon (a vehicle), a violation of NMSA 1978, Section 30-3-5(A), (C) (1969); (3) leaving the scene of an accident where great bodily injury had occurred, a violation of NMSA 1978, Section 66-7-201(A), (C) (1989); (4) aggravated driving while under the influence of intoxicating liquor, a violation of NMSA 1978, Section 66-8-102(D) (2010, amended 2016); and (5) criminal damage to property amounting to $1,000 or less, a violation of NMSA 1978, Section 30-15-1 (1963).

**{4}**     The indictment flowed from an incident in which Ortiz, while intoxicated, drove her vehicle (an SUV) into Brandon Hughes, her ex-boyfriend. After striking Hughes, Ortiz crashed her SUV into a fence where it became stuck. Hughes' leg was severely injured. Ortiz fled from the scene on foot and was located by the police a short time later.

**{5}**     On the morning of the first day of trial, Ortiz alerted the district court that she wanted the jury instructed on duress because Hughes engaged in threatening conduct. The court determined that it would resolve the question "whether there's evidence to support [the giving of the duress instruction] or not once we get to that point."

**{6}**     During trial, Ortiz explained that she struck Hughes accidentally and amid a flurry of chaotic activity precipitated by Hughes who made unwanted sexual advances and behaved aggressively. Ortiz explained that these advances were alarming to her because Hughes had raped her during the time they dated. While testifying for the State, Hughes denied these allegations and gave an account of the incident that suggested that Ortiz hit him purposefully because she was angry with him. He explained that Ortiz drove her SUV onto the sidewalk, hit him, and crashed through the fence with him on the hood.

**{7}**     When, at the end of trial, the district court returned to the question of Ortiz's entitlement to a duress jury instruction, the court initially expressed agreement with the State's perspective that, because Ortiz claimed that she struck Hughes accidentally, she could not claim duress as a defense to any charge predicated on the fact that Hughes was struck. Ultimately, however, the court concluded that Ortiz was not entitled to a duress instruction because the law is settled that the accused's "[f]ear of immediate harm must be viewed together with whether a reasonable person in the defendant's

position would have acted the same way under the circumstances" and that "a reasonable person would not violate the law if legal alternatives are available." *State v. Castrillo*, 1991-NMSC-096, ¶ 15, 112 N.M. 766, 819 P.2d 1324, *holding modified by State v. Baca*, 1992-NMSC-055, ¶ 15, 114 N.M. 668, 845 P.2d 762. The district court determined that Ortiz did not act reasonably by driving her SUV into Hughes as she could have taken less drastic action to escape whatever threat to her he purportedly presented.

**{8}** The jury convicted Ortiz on all but one of the counts—criminal damage to property. She appealed all counts except her conviction for leaving the scene of an accident. *Ortiz*, 2018-NMCA-018, ¶ 1.

**{9}** The Court of Appeals affirmed Ortiz's aggravated DWI conviction, but reversed her convictions for great bodily injury by vehicle and aggravated battery. *Id.* ¶ 27. The Court held that the district court wrongly denied Ortiz the opportunity to present a duress defense as to these two counts and reasoned that Ortiz offered sufficient evidence at trial—Ortiz's rape allegations and assertions that Hughes made unwanted sexual advances and behaved aggressively on the night of the incident—to warrant giving her jury the duress instruction. *Id.* ¶¶ 16-17. The Court remanded for a new trial. *Id.* ¶ 27.

**{10}** Ortiz did not petition this Court for a writ of certiorari to challenge the Court of Appeals' affirmance of the aggravated DWI conviction. The State did ask this Court to review the Court of Appeals' decision to reverse the great bodily injury and aggravated battery convictions. Our jurisdiction is uncontested. *See* N.M. Const. art. VI, § 3; NMSA 1978, § 34-5-14(B) (1972).

## II.   DISCUSSION

**{11}** The specific question presented is whether Ortiz's jury should have been instructed that duress was a possible defense to causing great bodily injury by vehicle and aggravated battery. The State argues that Ortiz's contention that she accidentally perpetrated the criminal acts at issue here precludes her from asserting duress as a defense to the crimes. We agree, and to understand why, we clarify the law governing duress and closely examine the record and evidence presented at trial.

### A.   Duress

**{12}** A defendant seeking a duress instruction must make "a prima facie showing that he was in fear of immediate and great bodily harm to himself or another and that a reasonable person in his position would have acted the same way under the circumstances." *Castrillo*, 1991-NMSC-096, ¶ 4. By asserting duress, the accused admits performing the crime but seeks excusal from punishment on grounds that the action was compelled by an imminent threat of serious harm to the accused or another. *See* Rule 14-5130 NMRA (instructing that duress necessarily involves the commission of crime and violation of the law); *Esquibel*, 1978-NMSC-024, ¶ 9; *State v. Rios*, 1999-

NMCA-069, ¶¶ 12, 17, 127 N.M. 334, 980 P.2d 1068.  These New Mexico authorities hint at the conclusion we reach here—to claim duress, you must admit committing the criminal act.  Case law from other jurisdictions reaches the same conclusion.

**{13}**  "[A] person who commits a crime under duress makes a choice to violate the law, even though that choice is compelled."  *State v. Daoud*, 679 A.2d 577, 581 (N.H. 1996) (internal quotation marks and citation omitted).  They know their "actions will lead to injury or that [their] purpose is to cause injury."  *United States v. Solorzano-Rivera*, 368 F.3d 1073, 1079-80 (9th Cir. 2004) (internal quotation marks and citation omitted).  The assertion of duress necessarily presupposes "that the defendant has voluntarily performed the criminal act[.]"  *United States v. Johnson*, 956 F.2d 894, 897 (9th Cir. 1992).  The defendant asserting "duress *admits* that [they] committed the unlawful act, but pleads an excuse for doing so."  *State v. Riker*, 869 P.2d 43, 52 (Wash. 1994) (en banc).

**{14}**  In duress, "the actor engages in conduct voluntarily, correctly perceives the nature of his act, and is aware that it is wrong."  Paul H. Robinson, *Criminal Law Defenses: A Systematic Analysis*, 82 Colum. L. Rev. 199, 225 (1982).  "He is exculpated because he lacks the capacity to control his conduct: he cannot fairly be held accountable for it. . . . The duress defense is based solely on this defect in control." *Id.*  If duress is successfully asserted, the crime perpetrated is excused as a blameless act.  Joshua Dressler, *Exegesis of the Law of Duress: Justifying the Excuse and Searching for Its Proper Limits*, 62 S. Cal. L. Rev. 1331, 1350, 1357-60 (1989).

**{15}**  For these reasons, some jurisdictions refer to duress as a "confession and avoidance" defense.  *See State v. Hess*, 449 P.2d 46, 50 (Ariz. Ct. App. 1969), *abrogated on other grounds by State v. Rodriguez*, 961 P.2d 1006, 1011 (Ariz. 1998); *People v. Suazo*, 867 P.2d 161, 166 (Colo. App. 1993); *State v. Gordon*, 365 A.2d 1056, 1056 (Conn. 1976); *People v. Calvano*, 282 N.E.2d 322, 325 (N.Y. 1972); *People v. Contes*, 91 A.D.2d 562, 563 (N.Y. App. Div. 1982), *aff'd*, 454 N.E.2d 932 (N.Y. 1983); *State v. Duty*, 1982 WL 2887, at *4 (Ohio Ct. App. 1982); *State v. Milam*, 156 N.E.2d 840, 857 (Ohio Ct. App. 1959) (Skeel, J., dissenting); *Rodriguez v. State*, 368 S.W.3d 821, 824 (Tex. App. 2012).  These jurisdictions do this because duress requires the defendant "to first admit that he engaged in the proscribed conduct by admitting to all elements of the underlying offense, then claim that his commission of the offense" excuses the act.  *Rodriguez*, 368 S.W.3d at 824 (internal quotation marks and citation omitted).  The basic thought at work here is that "[o]ne cannot establish that an act is [excused] without first . . . admitting to the commission of[] the predicate act."  *Id.* (internal quotation marks and citation omitted).

**{16}**  One prominent scholarly article contends that the duress defense is singularly unique because it demands that courts and society more broadly ask and answer an entirely counterintuitive question: Under what circumstances is it unjust to punish a wrongdoer who commits a wrong entirely intentionally?  Dressler, *supra*, 62 S. Cal. L. Rev. at 1357-59.  This is indeed the question duress forces us to confront because "the coerced actor not only possesses the capacity to understand the attendant factual and

legal circumstances, but he does *in fact* realize what it is he is doing." *Id.* at 1359. "When [hypothetical actor] D steals a watch under duress, he knows that he is taking a watch; when he commits perjury, he realizes that he is uttering a falsehood under oath[.]" *Id.* In neither case "could D reasonably deny that he knew that his actions were unlawful." *Id.*

**{17}** These authorities establish that a defendant cannot request the duress instruction if they deny any intention to perpetrate a crime. The validity of this view is further established by our uniform jury instruction for duress.

**{18}** The duress instruction directs the jury that they must evaluate why "the defendant was forced to" commit the crime under consideration. UJI 14-5130. The instruction further requires the jury to evaluate the consequences to the defendant "if he did not commit the crime[.]" *Id.* When the crime at issue is a strict liability crime, the jury must also ensure that the defendant was not "compelled . . . to violate the law" due to his own conduct. *Id.* Lastly, the instruction informs the jury that they must decide whether a reasonable person would also have acted in the same way as the defendant. *Id.*

## B.    Evidence Presented at Trial

**{19}** Ortiz offered the following account of the incidents. She and Hughes met one another for dinner and then went to a bar. They left the bar together, and Hughes drove them back to his house in Ortiz's SUV. Ortiz intended to spend the night at Hughes' house as she had done before. Hughes then made unwanted sexual advances that she rejected. She explained that these unwanted advances distressed her because, as previously noted, she alleged that Hughes had raped her during the time they dated one another. She testified that she felt compelled to leave and so left Hughes' house and got into her SUV. Hughes followed her and got into the SUV with her. She drove away from the house with Hughes in the front passenger seat.

**{20}** Ortiz testified that they drove some distance from Hughes' house. She said that Hughes yelled and screamed at her as they drove and that she eventually decided that she should call her father. As she was making that call, Hughes grabbed the phone from her hand and, in doing so, caused her to "jerk" the steering wheel of her SUV. When this happened, she drove onto the sidewalk and then through the fence. This chain of events was, according to Ortiz, how she came to hit the fence and Hughes. A close examination of Ortiz's explanation, in her own words, about how precisely Hughes was struck makes clear Ortiz could not claim duress for striking him with her SUV.

**{21}** The following testimony from Ortiz on cross-examination shows quite clearly that she was adamant Hughes was struck accidentally and solely as a consequence of the fact that he caused her to "jerk" the wheel of her SUV. Ortiz spoke the words that follow after being challenged by the State to explain how Hughes could be simultaneously in the vehicle pulling her hand and causing her to swerve and in front of the vehicle in a position where he could be struck.

| Ortiz: | Well, when he pulled me, I jerked.  I completely jerked over the—the vehicle jerked over.  And so when he—he was, like, trying to run around.  It seemed like I don't know what he was doing. |
|---|---|
| Prosecutor: | So there was, like, a delayed reaction between when he grabbed your hand and you jerked the vehicle? |
| Ortiz: | No.  It happened all at the same time. |
| Prosecutor: | So what you're telling us is that [Hughes] grabbed your hand, got out of the vehicle, and ran around in front of it all in the same, like, two-second period? |
| Ortiz: | It seemed like seconds, yes. |

**{22}** Ortiz went on to testify that she had no knowledge that she hit Hughes when she accidentally drove onto the sidewalk and through the fence.  Although Hughes testified that he was yelling out in pain after the accident and that Ortiz briefly consoled him and told him to be quiet, Ortiz claimed that she did not hear Hughes yelling, did not see him after the accident, and denied having any knowledge at the time the incident happened that she had hit Hughes and severely injured him.  She claimed that she knew only that she had driven through the fence.

## C. Ortiz's Entitlement to the Duress Instruction

**{23}** "While an accused is entitled to instruction on his theory of the case if evidence exists to support it, the court need not instruct if there is absence of such evidence." *State v. Gardner*, 1973-NMSC-034, ¶ 22, 85 N.M. 104, 509 P.2d 871.  Of course, a defendant must also be entitled to the instruction as a matter of law.  *See State v. Ellis*, 2008-NMSC-032, ¶ 17, 144 N.M. 253, 186 P.3d 245.  Given Ortiz's testimony, she was not entitled, as a matter of law, to a duress instruction for the offenses we are concerned with here.

**{24}** As noted, Ortiz claimed that she drove onto the sidewalk and through the fence because Hughes caused her to "jerk" the wheel of her SUV and this, in turn, caused Ortiz to swerve and drive into him.  She said that she had no idea Hughes was struck.  She knew only that she hit the fence.  Ortiz's counsel described the fact that Hughes was struck as an event that was accidental.  The prosecutor did as well.  Ortiz did not object to this characterization of the incident.  Indeed, she characterized it in exactly the same way.

**{25}** In sum, the gist of Ortiz's testimony was that she did not even know Hughes was struck when she hit the fence.  He was struck accidentally and nonvolitionally.  Because Ortiz testified that she did not intentionally or volitionally hit Hughes, she could not invoke duress as a defense to the two convictions with which we are here concerned.

**{26}** The cases already cited and our uniform jury instruction make clear that it is a necessary and immovable presupposition of duress that the accused admit performing the criminal act with which she is charged.  This law exists for good reason.  If Ortiz was permitted to invoke duress as to the crimes charged for striking Hughes and if her jury was instructed on duress as a defense to those charges, her jury would have been required to ask and answer an entirely nonsensical question: whether a reasonable person in Ortiz's position would also have accidentally hit Hughes.  Accidents are, by definition, unique events caused by circumstances that are not reproducible.  It makes no sense to ask whether a reasonable person in Ortiz's position would also have accidentally struck Hughes.

## III.    CONCLUSION

**{27}** For the reasons stated above, Ortiz was not entitled to a duress instruction with respect to the crimes at issue in this appeal—great bodily injury by vehicle and aggravated battery.  We therefore reverse and remand to the Court of Appeals to consider Ortiz's double jeopardy arguments that were not addressed.  *Ortiz*, 2018-NMCA-018, ¶ 1.

**{28}   IT IS SO ORDERED.**

**JUDITH K. NAKAMURA, Chief Justice**

**WE CONCUR:**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**

**MARY L. MARLOWE SOMMER, Judge**
**Sitting by designation**