This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-34419

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**CRYSTAL ORTIZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Stan Whitaker, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HANISEE, Chief Judge.**

**{1}**     This case is before us on remand from our New Mexico Supreme Court to address the double jeopardy arguments raised by Defendant Crystal Ortiz that were not resolved in our original opinion filed on December 13, 2017. *State v. Ortiz* (*Ortiz I*), 2018-NMCA-018, ¶ 1, 412 P.3d 1132, *rev'd*, *State v. Ortiz* (*Ortiz II*), 2020-NMSC-008, ¶ 27, 468 P.3d 833. The jury convicted Defendant of four charges: (1) great bodily harm by vehicle (GBHV) (driving while intoxicated (DWI)), contrary to NMSA 1978, Section

66-8-101(B), (C) (2004, amended 2016); (2) aggravated battery (deadly weapon-vehicle), contrary to NMSA 1978, Section 30-3-5(A), (C) (1969); (3) aggravated DWI, contrary to NMSA 1978, Section 66-8-102(D)(1), (2010, amended 2016); and (4) leaving the scene of an accident (great bodily harm), contrary to NMSA 1978, Section 66-7-201(A), (C) (1989). Defendant argues her convictions for aggravated battery, aggravated DWI, as well as GBHV (DWI) violate double jeopardy. Defendant does not appeal her fourth conviction of leaving the scene of an accident. We affirm in part and reverse in part.

## BACKGROUND

**{2}**     The charges arose from an incident in which Defendant, while intoxicated, drove her vehicle (an SUV) into Brandon Hughes (Victim), her ex-boyfriend. After striking Victim, Defendant crashed her SUV into a fence where it became stuck. *Ortiz II*, 2020-NMSC-008, ¶ 4. Victim's leg was severely injured, and Defendant fled from the scene on foot and was located by the police soon thereafter. *Id.* Defendant claimed that she had no idea that she struck Victim and that she must have accidently struck him with her vehicle, leading our Supreme Court to conclude that Defendant was therefore not entitled to a duress instruction. *Id.* ¶¶ 22-23. We now evaluate whether Defendant's convictions for aggravated battery and aggravated DWI arising out of the underlying events for which Defendant was convicted of GBHV (DWI) violated Defendant's right to be free from double jeopardy. Because this a memorandum opinion and the parties are familiar with the facts and procedural history of this case, we reserve further discussion of specific facts where necessary to our analysis.

## DISCUSSION

### I.      Defendant's Conviction for Aggravated DWI Violates Double Jeopardy but Defendant's Conviction for Aggravated Battery Does Not Violate Double Jeopardy

**{3}**     Defendant argues that her right to be free from double jeopardy was violated because her convictions for aggravated DWI and aggravated battery were subsumed in her third degree GBHV (DWI) conviction. We agree that Defendant's misdemeanor offense for aggravated DWI should be vacated because it is a lesser included offense of GBHV (DWI) upon which Defendant has also been convicted, and thus violates double jeopardy; however, we disagree that her conviction for aggravated battery violates double jeopardy. We explain.

**{4}**     We review double jeopardy claims de novo. *State v. Swick*, 2012-NMSC-018, ¶ 10, 279 P.3d 747 ("A double jeopardy challenge is a constitutional question of law which we review de novo."). "Double jeopardy protects against both successive prosecutions and multiple punishments for the same offense." *State v. Serrato*, 2021-NMCA-027, ¶ 11, 493 P.3d 383 (alteration, internal quotation marks, and citation omitted). Here, Defendant's case involves the latter—multiple punishments for the same offense. Multiple punishment cases are classified in one of two ways: the first is the double-

description case, where a single act results in multiple charges under different criminal statutes; the second is the unit of prosecution case, where a defendant challenges convictions for multiple violations under the same criminal statute. *Id.* Because, here, Defendant alleges the same conduct resulted in multiple convictions under different statutes, we apply a double-description analysis.

{5} For double-description claims, we apply the two-part test set forth in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. We first evaluate whether the conduct underlying the offenses is unitary, that is, whether the same conduct violates both statutes. *Id.* "If the conduct is not unitary, there is no double jeopardy violation." *State v. Lucero*, 2015-NMCA-040, ¶ 21, 346 P.3d 1175. If the conduct is unitary, we then interpret the statute "to determine whether the Legislature intended to create separately punishable offenses." *Id.* (alteration, internal quotation marks, and citation omitted). We address each of Defendant's double jeopardy challenges in turn.

## A. Aggravated DWI and GBHV (DWI)

{6} Defendant contends that her misdemeanor conviction for aggravated DWI violates double jeopardy because it is subsumed within her third degree felony conviction for GBHV (DWI). The State, however, argues that there was no double jeopardy violation because the conduct supporting these two convictions was not unitary since the crime of aggravated DWI was complete before the crime of GBHV (DWI). We explain below our conclusions that the underlying conduct of both GBHV (DWI) and aggravated DWI was unitary and that the Legislature did not intended to punish the two crimes separately.

## 1. Unitary Conduct

{7} In determining "whether a defendant's conduct was unitary, we consider whether a defendant's acts are separated by sufficient indicia of distinctness." *State v. Jackson*, 2020-NMCA-034, ¶ 34, 468 P.3d 901 (alterations, internal quotation marks, and citation omitted). "[W]e may consider as indicia of distinctness the separation of time or physical distance between the illegal acts, the quality and nature of the individual acts, and the objectives and results of each act." *Id.* (internal quotation marks and citation omitted).

{8} The night of the incident, Defendant, Defendant's father, and Victim went out drinking, and eventually, Victim drove Defendant to Victim's house. *Ortiz I*, 2018-NMCA-018, ¶ 7. Defendant planned to "spend the night at [Victim's] house as she had done before[, however, Victim] made unwanted sexual advances that she rejected." *Ortiz II*, 2020-NMSC-008, ¶ 19. Defendant "explained that these unwanted advances distressed her because . . . she alleged that [Victim] had raped her during the time they dated one another." *Id.*

{9} Defendant then left Victim's house and entered her vehicle, but Victim also jumped in, so she drove away from Victim's house with Victim in the front passenger seat. *Id.* Defendant ordered Victim out of the vehicle several times, but he would not

leave. *Ortiz I*, 2018-NMCA-018, ¶ 10. Defendant testified that she tried to call her father, but Victim "grabbed the phone from her hand and, in doing so, caused her to 'jerk' the steering wheel of her [vehicle]." *Ortiz II*, 2020-NMSC-008, ¶ 20. When this happened, Defendant testified that Victim jumped out of the car and started to run around to the front of the car; simultaneously, the car jumped the curb and hit a fence. *Id.* ¶¶ 20-21. "This chain of events was, according to [Defendant], how she came to hit the fence and [Victim]." *Id.* ¶ 20. "[Defendant] went on to testify that she had no knowledge that she hit [Victim] when she accidentally drove onto the sidewalk and through the fence." *Id.* ¶ 22.

**{10}** The State's presentation of events differed in important respects, and the State contends that Defendant's version of events—that Victim simultaneously grabbed Defendant's phone, jumped out of the vehicle, and ran around the vehicle such that Defendant did not know she hit Victim—was a "law-of-physics-defying explanation." In contrast to Defendant's testimony, Victim testified that Defendant ordered him out of her vehicle, and that Victim grabbed the phone from Defendant so he could speak to Defendant's father. Victim stepped out of the vehicle and started walking on the sidewalk towards his home a few blocks away. Soon thereafter, he saw a flash of light behind him before Defendant hit him, causing Victim to land on the hood of the vehicle before crashing with him on the hood through a fence. Victim suffered an open tibia fracture from the accident.

**{11}** The State argues that Defendant's conduct is not unitary because Defendant was intoxicated at the time she began to drive her vehicle away from Victim's residence towards her home, and thus, Defendant's guilt for aggravated DWI was established as soon as she began to drive. The State contends that such conduct is separate and distinct from when Defendant ordered Victim out of the vehicle and proceeded to hit Victim with her vehicle. To support its position, the State relies heavily on *State v. Dominguez*, arguing that the kidnapping charge there is comparable to the aggravated DWI charge here. 2014-NMCA-064, ¶ 10, 327 P.3d 1092. There, we held that the kidnapping charge was factually distinct from the second degree criminal sexual penetration charge and that "[t]he crime of kidnapping [was] complete when the defendant, with the requisite intent, restrain[ed] the victim, even though the restraint continue[d] through the commission of a separate crime." *Id.*

**{12}** We do not consider *Dominguez* to be applicable here because the charges in this case are not factually distinct from one another such that the commission of each by Defendant is separated by a sufficient "indicia of distinctness." *See State v. DeGraff*, 2006-NMSC-011, ¶ 27, 139 N.M. 211, 131 P.3d 61. The State's attempt to separate the closely overlapping factual circumstances by arguing that Defendant completed the crime of aggravated DWI when Defendant started driving her vehicle while intoxicated— as opposed to when she shortly thereafter drove into Victim and struck a fence while intoxicated—is unpersuasive. Our review of the record suggests that the charges of aggravated DWI and GBHV (DWI) stem from the same act of operating a vehicle while under the influence of intoxicating liquor, and our current jurisprudence does not support the State's interpretation of events in this context. Notably, unlike the crime of kidnapping, as in *Dominguez*, we are not required by controlling case law to treat the

crime of DWI as a continuing crime—with the requisite determination of "distinctness" from ensuing crimes which flow from that act—such that the crime is complete despite continuing through the commission of a separate crime. *See id.* ("In our consideration of whether conduct is unitary, we have looked for an identifiable point at which one of the charged crimes had been completed and the other not yet committed."); *Dominguez*, 2014-NMCA-064, ¶ 10; *State v. Bahney*, 2012-NMCA-039, ¶ 35, 274 P.3d 134 ("[I]t is well settled in New Mexico that kidnapping is a continuing crime[.]"). Absent such controlling precedent, we agree with Defendant that under the facts of this case the conduct underlying both offenses is unitary. We, therefore, turn to legislative intent to determine whether the Legislature intended "to punish the two crimes separately." *Swick*, 2012-NMSC-018, ¶ 11.

## 2. Legislative Intent

**{13}** "[L]egislative intent is our primary concern in deciding multiple punishment cases, [so] we look first to the language of the statutes at issue." *State v. Frazier*, 2007-NMSC-032, ¶ 21, 142 N.M. 120, 164 P.3d 1. GBHV is defined as "the injuring of a human being, to the extent defined in [NMSA 1978,] Section 30-1-12 [(1963)], in the *unlawful operation* of a motor vehicle." Section 66-8-101(B) (emphasis added); § 30-1-12(A) (defining "great bodily harm" as "an injury to the person which creates a high probability of death[,] or which causes serious disfigurement[,] or which results in permanent or protracted loss or impairment of the function of any member or organ of the body"). Subsection C of the GBHV statute further provides:

> A person who commits homicide by vehicle or [GBHV] while under the influence of intoxicating liquor or while under the influence of any drug or while violating [NMSA 1978,] Section 66-8-113 [(1987)] is guilty of a third degree felony and shall be sentenced pursuant to the provisions of [NMSA 1978,] Section 31-18-15 [(2019)], provided that violation of speeding laws as set forth in the Motor Vehicle Code[, NMSA 1978, §§ 66-1-1 to -5 (1978, as amended through 2019)] shall not per se be a basis for violation of Section 66-8-113.

Section 66-8-101(C). Subsection D then specifies that a defendant with a prior DWI conviction shall have her "sentence increased by four years for each prior DWI conviction." Section 66-8-101(D). Aggravated DWI, on the other hand, is defined as:

> driving a vehicle in this state with an alcohol concentration of sixteen one hundredths or more in the driver's blood or breath within three hours of driving the vehicle and the alcohol concentration results from alcohol consumed before or while driving the vehicle[.]

Section 66-8-102(D)(1). Considering Defendant's prior DWI convictions, the State also notified the district court of its intent to pursue a more severe penalty under Section 66-8-102(G), which states, "[u]pon a fourth conviction pursuant to this section, [a defendant] is guilty of a fourth degree felony[.]"

**{14}** Because neither the GBHV nor the aggravated DWI statute expressly provides for multiple punishments, we must first determine whether each statutory "provision requires proof of a fact which the other does not." *See Jackson*, 2020-NMCA-034, ¶ 35 (internal quotation marks and citation omitted). "[I]f one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." *Id.* ¶ 36 (internal quotation marks and citation omitted). "That presumption, however, is not conclusive and it may be overcome by other indicia of legislative intent, which may be gleaned from the statutory schemes by identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors." *Id.* (alteration, internal quotation marks, and citations omitted).

**{15}** "[W]hen a statute is . . . written with many alternatives," as is the case for both statutes at issue here since there are multiple methods to violate each statute, "we apply a modified version of the *Blockburger* test." *Serrato*, 2021-NMCA-027, ¶ 16 (alteration, internal quotation marks, and citation omitted). Under the modified *Blockburger* test, "we no longer apply a strict elements test in the abstract; rather, we look to the state's trial theory to identify the specific criminal cause of action for which the defendant was convicted, filling in the case-specific meaning of generic terms in the statute when necessary." *Id.* (internal quotation marks and citation omitted); *see also State v. Torres*, 2018-NMSC-013, ¶ 25, 413 P.3d 467 ("In New Mexico . . . our law does not permit an application of *Blockburger* that is so mechanical that it is enough for two statutes to have different elements." (internal quotation marks and citation omitted)). As such, instead of analyzing the "statute in the abstract, we look at the legal theory of the offense that is charged" when comparing the elements of the statute. *State v. Gutierrez*, 2011-NMSC-024, ¶ 58, 150 N.M. 232, 258 P.3d 1024 (internal quotation marks and citation omitted); *see also State v. Ramirez*, 2016-NMCA-072, ¶ 18, 387 P.3d 266 ("When applying *Blockburger* to statutes that are vague and unspecific or written with many alternatives, we look to the charging documents and jury instructions to identify the specific criminal causes of action for which the defendant was convicted.").

**{16}** Both the GBHV (DWI) and aggravated DWI statutes, as well as the jury instructions in this case, indicate that each crime requires proof of a fact which the other does not. The GBHV (DWI) statute, the grand jury indictment, and the jury instructions require proof that Defendant "caused . . . great bodily injury" to Victim, *see* § 66-8-101(B), (C); UJI 14-240 NMRA (1997)—a fact which is not required for aggravated DWI. *See* § 66-8-102(D). Likewise, the aggravated DWI statute, the grand jury indictment, and the jury instructions require proof that "[w]ithin three hours of driving, . . . [D]efendant had an alcohol concentration of sixteen one-hundredths (.16) grams or more in two hundred ten liters of breath[,]" *see* § 66-8-102(D)(1); UJI 14-4506 NMRA—a fact which is not required for GBHV (DWI). *See* § 66-8-101(B), (C). Defendant contends that the elements of aggravated DWI were subsumed within the GBHV charge because the GBHV was charged under a DWI theory, and because the State relied on the same facts to establish the elements of both counts.

**{17}** The charging documents and jury instructions for GBHV (DWI) do not require that Defendant be intoxicated with "an alcohol concentration of sixteen one-hundredths (.16) grams or more in two hundred ten liters of breath[,]" and instead require that the Defendant "operated a motor vehicle while under the influence of intoxicating liquor" when she caused the great bodily injury to Victim. *See* § 66-8-101(B), (C). However, the State's closing arguments reveal that its legal theory of the case relies on the specific concentration of alcohol in Defendant's breath to prove "intoxication" for GBHV (DWI) as well as aggravated DWI. *See State v. Gonzales*, 2019-NMCA-036, ¶ 24, 444 P.3d 1064 (looking to the state's closing argument when the indictment and jury instructions provided insufficient detail about the state's theory of the case); *see also State v. Silvas*, 2015-NMSC-006, ¶¶ 19-20, 343 P.3d 616 (turning to the state's closing argument as evidence of the state's legal theory in applying the modified *Blockburger* analysis). Thus, the basis for Defendant's GBHV conviction was the same for the aggravated DWI for which she was convicted.

**{18}** Moreover, we highlight that the purpose of both the aggravated DWI and GBHV (DWI) statutes is to protect the public from intoxicated drivers. *See State v. Gray*, 2016-NMCA-095, ¶ 17, 384 P.3d 1083 (explaining that "[t]he social evil of DWI is rationally related to the monstrous consequences that occur when the perpetrator kills or harms others" not the perpetrator themselves" in a case involving GBHV (DWI)); *State v. Munoz*, 1998-NMSC-041, ¶ 20, 126 N.M. 371, 970 P.2d 143 ("The purpose of the vehicular homicide statute is . . . *to punish reckless driving or impaired driving* when such conduct results in death or great bodily injury." (emphasis added)); *see also State v. Roper*, 1996-NMCA-073, ¶ 17, 122 N.M. 126, 921 P.2d 322 (stating that DWI has a "great potential for serious injury or death" and that the act of DWI "represents a reckless and inexcusable disregard for the rights of other members of the [traveling] public" (internal quotation marks and citation omitted)).

**{19}** Under a modified *Blockburger* analysis, we are not limited by a strict elements test. *Serrato*, 2021-NMCA-027, ¶ 16. Here, the presumption that the Legislature intended separate punishments given the distinct elements in each charge, *see Jackson*, 2020-NMCA-034, ¶ 48, is overcome after reviewing the State's legal theory and the common purpose of the statutory schemes. Therefore, we conclude that Defendant's aggravated DWI conviction must be vacated and merge with the greater offense of GBHV (DWI) because it violates double jeopardy. *See State v. Santillanes*, 2000-NMCA-017, ¶ 15, 128 N.M. 752, 998 P.2d 1203 (holding that the defendant's DWI conviction merged with the vehicular homicides (DWI) convictions), *rev'd on other grounds*, 2001-NMSC-018, 130 N.M. 464, 27 P.3d 456; *see also State v. Pierce*, 1990-NMSC-049, ¶ 46, 110 N.M. 76, 792 P.2d 408 ("The rule of merger precludes an individual's conviction and sentence for a crime that is a lesser included offense of a greater charge upon which [the] defendant has also been convicted.").

**B.    Aggravated Battery (Deadly Weapon) and GBHV (DWI)**

**{20}** Defendant next argues that her convictions for both aggravated battery (deadly weapon) and GBHV (DWI) violate double jeopardy. The State again argues that there

was no double jeopardy violation, contending that the conduct supporting these two convictions was not unitary because GBHV (DWI) requires the perpetrator to be intoxicated while aggravated battery (deadly weapon) requires the intent to injure a victim, and, thus, the nature of the conduct required to establish each crime is different. While we agree with Defendant that the conduct underlying the two convictions was unitary, we conclude that the Legislature intended to punish the two crimes separately.

## 1.    Unitary Conduct

**{21}**    Defendant argues that the conduct underlying her convictions is unitary because, while her convictions arose under separate statutes, they are all based on "one act of operating a motor vehicle while under the influence of intoxicating liquor and inflicting injury upon a single individual." The State supports its argument that Defendant's conduct is not unitary by highlighting distinct elements of each crime under the respective statutes. When considering whether Defendant's conduct was unitary, we consider whether the acts were "close in time and space, their similarity, the sequence in which they occurred, whether other events intervened, and the defendant's goals for and mental state during each act." *Lucero*, 2015-NMCA-040, ¶ 22 (internal quotation marks and citation omitted).

**{22}**    We again fail to see a "sufficient indicia of distinctness" between the conduct underlying Defendant's convictions for aggravated battery and GBHV (DWI). That Defendant hit Victim with her vehicle forms the basis for both convictions. There is no evidence of intervening events, *see State v. Comitz*, 2019-NMSC-011, ¶ 39, 443 P.3d 1130 (stating that courts look "for an event that intervened between the crimes at issue, distinguishing the crimes from one another" (internal quotation marks and citation omitted)), nor facts that establish a sequence of events in any way separating one charge from the other. In addition, the distinction between injuring Victim with a vehicle while intoxicated versus injuring Victim with a vehicle with the specific intent to do so is a distinction without a difference when considering whether the conduct was unitary: both crimes were simultaneously committed during a singular accelerative event occasioned by Defendant. There is simply no evidence supporting a factual distinction between when Defendant hit Victim with her vehicle for the aggravated battery charge versus that same collision for the GBHV charge. Accordingly, since Defendant was charged for the same conduct of injuring Victim with her vehicle under both statutes, we conclude that the conduct was unitary.

## 2.    Legislative Intent

**{23}**    In the second prong of our double-description analysis, we first consider the language of the aggravated battery (deadly weapon) statute, which we have not yet discussed in detail. *See Frazier*, 2007-NMSC-032, ¶ 21. Section 30-3-5(A) defines aggravated battery as "the unlawful touching or application of force to the person of another *with intent* to injure that person or another." (Emphasis added.) Subsection (C) of the statute elaborates that "[w]hoever commits aggravated battery inflicting great bodily harm or does so with a deadly weapon or does so in any manner whereby great

bodily harm or death can be inflicted is guilty of a third degree felony." Section 30-3-5(C).

**{24}** Both the GBHV (DWI) and the aggravated battery (deadly weapon) statutes at issue are written with alternatives, meaning that we again apply the modified *Blockburger* test to evaluate the legislative intent. *Serrato*, 2021-NMCA-027, ¶ 16. Under the modified *Blockburger* approach, when two statutory crimes are committed together, we not only look at the elements of the charges, but we consider the state's theory of the case, examining the grand jury indictment and the jury instructions given in the case. *See id.*; *see also Gutierrez*, 2011-NMSC-024, ¶ 58; *Ramirez*, 2016-NMCA-072, ¶ 18. Defendant argues that examination of the charging document and the jury instructions reveals the legislative intent that aggravated battery with a deadly weapon (in this case the vehicle) cannot be separately punished from GBHV (DWI) since they both require a finding that Defendant used her car as a deadly weapon and injured Victim.

**{25}** Here, consistent with the aggravated battery statute and the grand jury indictment, the jury instructions required that the State prove that: (1) Defendant "touched or applied force to [Victim] by contacting him with an automobile"; (2) Defendant "intended to injure [Victim]"; and (3) Defendant "caused great bodily harm to [Victim.]" Comparatively, the jury instructions for GBHV (DWI) are as follows: (1) Defendant "operated a motor vehicle while under the influence of intoxicating liquor"; and (2) Defendant "thereby caused the great bodily injury to [Victim.]" The State's legal theory for the aggravated battery (deadly weapon) is that Defendant intended to harm Victim and she used her vehicle as a deadly weapon to inflict such great bodily harm. *See* § 30-1-12(B) (defining deadly weapon as "any weapon which is capable of producing death or great bodily harm"). On the other hand, the State's theory on the GBHV (DWI) charge is that Defendant operated a motor vehicle while under the influence of intoxicating liquor—i.e., exclusive of any intent to injure Victim—when she caused the great bodily harm to Victim. While there are similarities between the two charges, the State's theory in the aggravated battery (deadly weapon) charge focuses on Defendant's intent to harm Victim and the use of the vehicle as a deadly weapon while the GBHV (DWI) charge focuses on Defendant's impaired driving resulting in great bodily harm to Victim.

**{26}** As the State points out, both the aggravated battery (deadly weapon) and GBHV (DWI) charges require proof of a fact which the other does not. *See Jackson*, 2020-NMCA-034, ¶ 36 ("[I]f one statute requires proof of a fact that the other does not, then the Legislature is presumed to have intended a separate punishment for each statute without offending principles of double jeopardy." (internal quotation marks and citation omitted)). The GBHV (DWI) charge requires proof that Defendant operated a vehicle "while under the influence of intoxicating liquor"—a fact which is not required for the aggravated battery (deadly weapon) charge. *Compare* § 30-3-5(C), *with* § 66-8-101(C). Similarly, the aggravated battery (deadly weapon) charge requires proof that Defendant "intended to injure [Victim]" as well as an unlawful touch or application of force—facts

which are not required for GBHV (DWI) charge. *Compare* § 30-3-5(A), *with* 66-8-101(B), (C). This is a distinction with a difference.

**{27}** In an effort to negate the distinct "intent" required for the aggravated battery charge, Defendant cites to *State v. Jordan* for the proposition that the GBHV (DWI) charge also requires a "mental state of conscious wrongdoing." 1972-NMCA-033, ¶ 9, 83 N.M. 571, 494 P.2d 984. We agree that general criminal intent is required for GBHV (DWI), as explained in the additional jury instructions in this case. *See* UJI 14-141 NMRA (defining general criminal intent); *State v. Marquez*, 2010-NMCA-064, ¶ 12, 148 N.M. 511, 238 P.3d 880 (defining conscious wrongdoing as the purposeful doing of an act that the law declares to be a crime, requiring only that a defendant purposefully engage in an unlawful act). However, the mental state required under the aggravated battery (deadly weapon) statute is indeed distinct because it requires *specific* intent, not just general criminal intent. *See State v. Baca*, 1997-NMSC-059, ¶ 51, 124 N.M. 333, 950 P.2d 776 ("In New Mexico, specific intent is the intent to do a further act or achieve a further consequence." (internal quotation marks and citation omitted)); *State v. Lovato*, 1990-NMCA-047, ¶ 4, 110 N.M. 146, 793 P.2d 276 ("Specific intent to injure an individual is an essential element of the offense of aggravated battery."). And that intent is not insignificant: it is the intent to strike someone. That each charge requires proof of a fact that the other does not raises the presumption that the Legislature intended a separate punishment for the violation of each statute. *See Jackson*, 2020-NMCA-034, ¶ 48. However, our inquiry does not end there. *See id.* ¶ 36 (explaining that since the presumption is not conclusive, other indicia of legislative intent are considered, including "identifying the particular evil addressed by each statute; determining whether the statutes are usually violated together; comparing the amount of punishment inflicted for a violation of each statute; and examining other relevant factors" (internal quotation marks and citation omitted)).

**{28}** We next consider whether "the particular evil sought to be addressed by each offense" is distinct. *Swafford*, 1991-NMSC-043, ¶ 32; *see id.* ("Statutes directed toward protecting different social norms and achieving different policies can be viewed as separate and amenable to multiple punishments."). As mentioned in our earlier analysis, the purpose of the vehicular homicide or GBHV statute is "to punish *reckless driving or impaired driving* when such conduct results in death or great bodily injury." *Munoz*, 1998-NMSC-041, ¶ 20 (emphasis added). On the other hand, the aggravated battery statute "protects against the social evil that occurs when one person intentionally physically attacks and injures another." *State v. Branch*, 2018-NMCA-031, ¶ 30, 417 P.3d 1141 (internal quotation marks and citation omitted). *Swick* clarifies that "aggravated battery is directed at protecting a person from bodily injury and . . . punishing actual harm" and may also be deemed to address "the social evil of harmful attacks on a person's physical safety and integrity." 2012-NMSC-018, ¶ 29 (internal quotation marks and citation omitted). The focus of the aggravated battery statute is not punishing impaired or reckless driving, as under the GBHV statute, rather punishing a perpetrator that intentionally uses force to physically injure someone else. These distinct social harms addressed in the two statutes suggest that the Legislature intended to punish the two crimes separately.

**{29}**    Additionally, it does not appear that "the statutes are usually violated together." *Id.* ¶ 13 (internal quotation marks and citation omitted). Finally, "[t]he fact that both offenses involved in this case are punishable as third-degree felonies supports our conclusion that punishment for both is consistent with legislative intent." *See State v. Cowden*, 1996-NMCA-051, ¶ 13, 121 N.M. 703, 917 P.2d 972. Nevertheless, this factor alone is not determinative. *Id.*; *see Jackson*, 2020-NMCA-034, ¶ 50 (explaining that "difference in the quantum of punishment alone is insufficient to overcome other indicia of legislative intent" (internal quotation marks and citation omitted)). Here, the State's theories of these charges were both that Defendant operated her vehicle while intoxicated and thereby caused great bodily harm, and separately, that she intended to injure Victim by contacting him with her vehicle and thereby caused great bodily harm. Moreover, the GBHV (DWI) and aggravated battery statutes address distinct evils, are not usually violated together, and both offenses are punished as third degree felonies here. Based on our foregoing analysis, we conclude that the Legislature intended to punish the crimes separately, and therefore, Defendant's aggravated battery conviction does not violate the prohibition against double jeopardy.

**CONCLUSION**

**{30}**    For these reasons, we vacate Defendant's conviction for aggravated DWI and affirm Defendant's conviction for aggravated battery.

**{31}    IT IS SO ORDERED.**

**J. MILES HANISEE, Chief Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JACQUELINE R. MEDINA, Judge**