The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: March 24, 2026

**No. A-1-CA-42347**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**MARCUS LOVATO,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Britt M. Baca, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**HENDERSON, Judge.**

{1}     Defendant Marcus Lovato appeals his convictions for two counts of criminal sexual penetration (CSP) in the second degree, contrary to NMSA 1978, Section 30-9-11(E)(4) (2009); conspiracy to commit CSP in the second degree, contrary to NMSA 1978, Section 30-28-2 (1979) and Section 30-9-11(E)(4); attempt to commit CSP in the second degree, contrary to NSMA 1978, Section 30-28-1 (1963, amended 2024)[1] and Section 30-9-11(E)(4); criminal sexual contact (CSC) in the fourth degree, contrary to NMSA 1978, Section 30-9-12(A), (C) (1993); and voyeurism, contrary to NMSA 1978, Section 30-9-20 (2007). On appeal, Defendant makes multiple claims that his various convictions violate his right to be free from double jeopardy, and argues that the district court erred in denying his requests for a jury instruction on duress. Concluding that Defendant's convictions do not violate double jeopardy and that Defendant failed to make a prima facie showing of duress, we affirm.

---

[1]Defendant's acts occurred on June 4, 2021, before the statute was amended in 2024. We use the original statute throughout, as that was the statute in effect at the time Defendant was charged, and the 2024 amendment is not relevant to our analysis.

**BACKGROUND**

{2}    On June 3, 2021, Defendant and his friend rented a motel room that was next door to a room that the codefendant, Isadore Gordon and Victim had rented. The pairs did not know each other and first met when they had a conversation on the shared motel balcony. The codefendant repeatedly invited Defendant to have a drink with him and Victim, and Defendant eventually agreed after the codefendant came to Defendant's room to ask. Defendant testified that while they were drinking on the balcony, the codefendant told Defendant to go into the codefendant's room because Victim needed to show him something. Defendant entered the codefendant's room and heard loud noises coming from the bathroom, Victim then stumbled out of the bathroom and passed out on the bed.

{3}    Once in the room, the codefendant testified that he flirted with Defendant, their conversation became sexual in nature, and they kissed. Defendant testified that he was scared because the codefendant was blocking the door and had threatened him that on codefendant's tribal reservation, "his kind of people know how to get rid of people," and that if Defendant did not do what the codefendant told him to do that he would "take [Defendant] out there and have [him] go missing." Both parties testified that the codefendant then told Defendant to perform sexual acts on Victim, who was now "passed out" and "flopped" over on the bed, while the codefendant recorded the acts on his cell phone. The codefendant recorded twenty-two

noncontinuous videos showing acts occurring in the codefendant and Victim's motel room, which were admitted as evidence and timestamped for varying durations between 1:13:47 a.m. and 4:09:16 a.m. on June 4, 2021. The codefendant testified that the videos were not continuous, such that there were moments not captured on video. Defendant testified that he repeatedly asked to leave the room to get lube and to shower as excuses to get out of the situation, but was told he could not leave by the codefendant. Defendant also testified that after he performed the acts with Victim, the codefendant sexually assaulted him, and he was only able to leave the room after the codefendant drunkenly fell over.

{4}     Defendant testified that after he left the codefendant's motel room he returned to his own room in a panicked state and his friend called the police. The police arrived to investigate and Defendant attended a sexual assault nurse examination (SANE) interview that day. Victim testified that he had no memory of the events after he had blacked out in the motel room. Victim also attended a SANE interview approximately one month later, but bodily fluids could not be recovered or analyzed given the time that had elapsed since the sexual assault. During the investigation, the police extracted the videos from the codefendant's phone, and Defendant and the codefendant became co-suspects. As a result, Defendant was indicted on four counts of CSP, one count of conspiracy to commit CSP, one count of attempted CSP, one count of CSC, one count of voyeurism, and one count of making a false report in

June 2021.[2] The codefendant accepted a plea deal conditioned on him testifying against Defendant.

{5}     At trial, the State called Victim, the codefendant, the responding officer, the detective on the case, and Victim's SANE nurse to testify. At the close of the State's evidence, the district court granted Defendant's motion for a directed verdict on Count 1 and the remaining counts were renumbered. Defendant also requested a jury instruction on duress, which was denied on grounds that Defendant had not introduced evidence of fear of imminent bodily harm. Defendant then testified during his case in chief that he only performed the sexual acts on Victim out of fear of the codefendant. Following this testimony, Defendant again requested a jury instruction on duress. The district court again denied his request, finding that Defendant had not shown that he was in fear of imminent danger, did not admit to the offenses, and did not act reasonably. The jury returned a verdict finding Defendant guilty of Count 2, CSP by anal penetration; Count 3, CSP by fellatio; Count 4, conspiracy to commit CSP; Count 5, attempt to commit CSP; Count 6, CSC; and Count 7, voyeurism. The jury found Defendant not guilty of Count 1, CSP by anal penetration. Defendant later filed a motion for a new trial on grounds that the district court erred by denying his request for a jury instruction on duress. The

[2]Prior to trial, the State entered a nolle prosequi for the count of making a false report, contrary to NMSA 1978, Section 30-39-1 (1979).

district court denied his motion, again finding that Defendant did not make a sufficient showing of duress. Defendant now appeals his convictions.

**DISCUSSION**

{6} On appeal, Defendant contends that (1) his various convictions violate his right to be free from double jeopardy on both unit of prosecution and double description grounds; and (2) the district court erred in denying his request for a jury instruction on duress. We begin by discussing Defendant's double jeopardy arguments.

**I.     Double Jeopardy**

{7} "The Double Jeopardy Clause of the Fifth Amendment, enforced against the states by the Fourteenth Amendment, protects defendants from receiving multiple punishments for the same offense." *State v. DeGraff*, 2006-NMSC-011, ¶ 25, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). "The defense of double jeopardy may not be waived and may be raised by the accused at any stage of a criminal prosecution, either before or after judgment." NMSA 1978, § 30-1-10 (1963). "We review double jeopardy claims de novo." *State v. Mora*, 2003-NMCA-072, ¶ 16, 133 N.M. 746, 69 P.3d 256. There are two types of multiple punishment cases: "First, there are double description cases in which a single act results in multiple charges under different criminal statutes. Second, there are unit of prosecution cases in which an individual is convicted of multiple violations of the

same criminal statute." *State v. Begaye*, 2023-NMSC-015, ¶ 12, 533 P.3d 1057 (alterations, internal quotation marks, and citation omitted). In this case, Defendant argues that his convictions violate his right to be free from double jeopardy on both grounds.

**A.     Unit of Prosecution**

{8}     Defendant first raises a unit of prosecution challenge to his convictions for Count 2, CSP by anal penetration; and Count 3, CSP by fellatio. The central inquiry in a unit of prosecution analysis is "whether the Legislature intended to allow multiple convictions under the same statute for the defendant's particular conduct in a given case." *State v. Valverde*, 2025-NMCA-024, ¶ 7, 576 P.3d 395. The courts use a two-step analysis when determining unit of prosecution violations. *See State v. Bernal*, 2006-NMSC-050, ¶ 14, 140 N.M. 644, 146 P.3d 289. "First, we review the statutory language for guidance on the unit of prosecution." *Id.* "If the language is not clear, then we move to the second step, in which we determine whether a defendant's acts are separated by sufficient indicia of distinctness to justify multiple punishments under the same statute." *Id.* (internal quotation marks and citation omitted). "If the acts are not sufficiently distinct, then the rule of lenity mandates an interpretation that the [L]egislature did not intend multiple punishments, and a defendant cannot be punished for multiple crimes." *Id.*; *see State v. Phillips*, 2024-NMSC-009, ¶ 11, 548 P.3d 51.

**{9}** Here, Defendant was charged pursuant to Section 30-9-11(E)(4) for both Counts 2 and 3. Regarding the first step of a unit of prosecution analysis, our Supreme Court has previously determined that Section 30-9-11 is ambiguous as to the unit of prosecution. *See Herron v. State*, 1991-NMSC-012, ¶ 8, 111 N.M. 357, 805 P.2d 624 (stating that the language of Section 30-9-11 "does not indicate unambiguously whether the [L]egislature intended . . . to create a separate offense for each penetration occurring during a continuous sexual assault"). Therefore, our analysis focuses on the second step to determine whether Defendant's acts supporting each conviction were separated by sufficient indicia of distinctness.

**{10}** In making the determination, we consider six factors outlined in *Herron*: (1) the temporal proximity of penetrations; (2) the location of the victim during each act; (3) the existence of intervening events; (4) the sequencing of acts; (5) the defendant's intent as evidenced by their conduct and utterances; and (6) the number of victims. 1991-NMSC-012, ¶ 15.

**{11}** In this case, Defendant's conviction for Count 2 was based on evidence that he caused Victim to engage in anal intercourse and Defendant's conviction for Count 3 was based on evidence that he caused Victim to engage in fellatio. In closing arguments, the State directed the jury's attention to different videos from the record that it argued proved each count. For Count 2, the State referenced a two-minute-and-twenty-nine-second-long video timestamped at 2:33:10 a.m. showing

Defendant standing over Victim, masturbating, rubbing himself against Victim's unclothed buttock, and seemingly penetrating Victim's anus while saying, "He's so tight." For Count 3, the State referred to a one-minute-and forty-one-second-long video timestamped at 2:25:57 a.m. showing Defendant repositioning Victim, kneeling, and performing fellatio on Victim.

{12}     Turning to the *Herron* factors, we agree with Defendant that the acts occurred over the course of one night, on the same bed, and with the same Victim. The videos show Defendant performing both acts after encouragement from the codefendant, and Defendant testified that his intent was to appease the codefendant. And, while "touching different parts of a victim's body is alone insufficient to support multiple convictions," *see Valverde*, 2025-NMCA-024, ¶ 19, the timing, sequencing of acts, and the nature of Defendant's acts here support a conclusion that the conduct underlying his convictions for CSP in Counts 2 and 3 is sufficiently distinct. *See Herron*, 1991-NMSC-012, ¶ 15. First, the videos used to prove each act were separated by approximately six minutes. *See Phillips*, 2024-NMSC-009, ¶ 32 (concluding that an approximate two-minute break between batteries was significant when analyzing indicia of distinctness).[3] Victim also shifted onto his side and

---

[3]Although the State references other video evidence on appeal to argue that the acts were separated by an hour and a half, the videos relied on to prove Counts 2 and 3 at trial were filmed less than ten minutes apart. *See State v. Lorenzo*, 2024-NMSC-003, ¶ 11, 545 P.3d 1156 (analyzing whether conduct was unitary based on the state's legal theory presented in closing arguments at trial and not the state's

Defendant repositioned Victim multiple times between the acts of fellatio and the penetration. *See Herron*, 1991-NMSC-012, ¶ 15 (asserting that "movement or repositioning of the victim between penetrations tends to show separate offenses"); *State v. Haskins*, 2008-NMCA-086, ¶ 18, 144 N.M. 287, 186 P.3d 916 (concluding that a victim's position was sufficiently distinct to support a finding of separate CSC of a minor (CSCM) offenses when the victim moved from being face down to lying on her back). Perhaps most significant, after performing fellatio, Defendant stood up, disrobed, repeatedly asked for lotion or lube, and stepped away to get his phone to watch pornography minutes before the penetration occurred. *See State v. Boergadine*, 2005-NMCA-028, ¶ 23, 137 N.M. 92, 107 P.3d 532 (noting that the *Herron* factor for sequencing of the acts is specifically tailored to address unit of prosecution issues for sexual offenses). Finally, the conduct in this case involves serial penetrations of different orifices with different body parts. *See Herron*, 1991-NMSC-012, ¶ 15 ("[S]erial penetrations of different orifices, as opposed to repeated penetrations of the same orifice, tend to establish separate offenses.").

{13}     Therefore, the conduct underlying Defendant's two convictions for CSP pursuant to Section 30-9-11(E)(4) was sufficiently distinct to constitute separate crimes and his convictions do not violate his right to be free from double jeopardy.

---

argument on appeal). Thus, we rely on the State's theory of the case as presented at trial, and the evidence introduced at trial to support that theory.

**B.       Double Description**

{14}     Defendant next raises a series of double description challenges, generally contending that his convictions violate double jeopardy because they are based on unitary conduct. When reviewing double description arguments, courts use the two-part test set out in *Swafford v. State*, 1991-NMSC-043, ¶ 25, 112 N.M. 3, 810 P.2d 1223. For part one, we determine "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* If the underlying conduct is unitary, we proceed to part two and look to "the statutes at issue to determine whether the [L]egislature intended to create separately punishable offenses." *Id.* "Only if the first part of the test is answered in the affirmative, and the second in the negative, will the double jeopardy clause prohibit multiple punishment in the same trial." *Id.*

{15}     Our Supreme Court recently reaffirmed that "we are doing a substantially similar analysis when we conduct a unitary conduct inquiry in double description cases as when we conduct a unit-of-prosecution inquiry." *Phillips*, 2024-NMSC-009, ¶ 13 (internal quotation marks and citation omitted). Accordingly, the inquiry for unitary conduct turns on whether there is "sufficient indicia of distinctness" between the acts at issue. *Swafford*, 1991-NMSC-043, ¶ 26. "The court may consider as indicia of distinctness the separation of time or physical distance between the illegal acts, the quality and nature of the individual acts, and the objectives and

results of each act." *Mora*, 2003-NMCA-072, ¶ 18 (internal quotation marks and citation omitted). Conduct is not unitary "when one crime is completed before another is committed, or when the force used to commit a crime is separate from the force used to commit another crime." *State v. Sena*, 2020-NMSC-011, ¶ 46, 470 P.3d 227. In conducting our analysis, we may consider "the elements of the charged offenses, the facts presented at trial, and the instructions given to the jury." *Id.* We also consider, "whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." *State v. Franco*, 2005-NMSC-013, ¶ 7, 137 N.M. 447, 112 P.3d 1104 (internal quotation marks and citation omitted).

{16}     When analyzing legislative intent under part two of the *Swafford* test, we first determine "whether the Legislature intended to permit multiple punishments" under each statute. *State v. Porter*, 2020-NMSC-020, ¶ 15, 476 P.3d 1201. If statutes are vague or written in the alternative, we apply the modified *Blockburger* test which considers the elements of each offense and the state's legal theory of how each statute was violated. *See Begaye*, 2023-NMSC-015, ¶ 17. We look to the evidence, charging documents, and jury instructions when analyzing the theory of a case, and may also review "testimony, opening arguments, and closing arguments to establish whether the same evidence supported a defendant's convictions under both statutes." *Id.* ¶ 18 (internal quotation marks and citation omitted).

{17}     Defendant asserts that the conduct used as the basis for his convictions on all counts was unitary, and specifically argues that his convictions for attempted CSP and CSC violate double jeopardy and should merge into his CSP conviction, his convictions for conspiracy to commit CSP and CSP violate double jeopardy, and that his convictions for voyeurism and CSP overlap to violate double jeopardy. We address each argument in turn.

**1.     CSP, Attempted CSP, and CSC**

{18}     Defendant's first double description challenge argues that his convictions for Count 5, attempted CSP, and Count 6, CSC, should merge into his conviction for Count 2, CSP by anal intercourse, because his actions were not separated by sufficient indicia of distinctness. The State argues that Defendant's conduct was not unitary.

{19}     In relevant part, the jury instruction for Count 2, CSP by anal intercourse, required the State to prove that "[D]efendant caused [Victim] to engage in anal intercourse." *See* § 30-9-11(A), (E)(4). The instruction for Count 5, attempted CSP, required the State to prove that Defendant intended to commit CSP and "began to do an act which constituted a substantial part of the [CSP] when aided or abetted by another but failed to commit the [CSP]." *See* § 30-28-1; § 30-9-11(E)(4). The instruction for Count 6, CSC, required the State to prove that "[D]efendant touched

or applied force to the unclothed buttocks of [Victim] without [Victim]'s consent." *See* § 30-9-12.

{20} Defendant contends that the video evidence used to prove each count shows a continuous course of unitary conduct because the acts occurred over a short period of time, with the same Victim, on the same bed, and there were no intervening events or movements to a different room. Defendant compares his case to *Mora,* where this Court concluded that a defendant's convictions for CSCM and attempted CSP of a minor violated double jeopardy because the underlying conduct was unitary when it took place in "the same short space of time, with no physical separation between the illegal acts." 2003-NMCA-072, ¶ 18. However, in *Mora* the state relied on a singular instance of a defendant laying on top of and "preparing to hump" a victim to constitute both CSC and attempted CSP. *Id.* ¶¶ 18, 20 (internal quotation marks omitted). Although we agree with Defendant that the events here occurred in a short span of time with Victim in the same bed, we find this case distinguishable. Our inquiry is whether acts are separated from each other by other indicia of distinctness. *See Sena*, 2020-NMSC-011, ¶ 46. As explained below, here the acts necessary to establish CSP occurred before the acts constituting CSC and attempted CSP, as lotion was applied to Victim and Victim was repositioned in between acts.

{21} In presenting its theory of the case, the State used specific video evidence presented at trial to prove each offense.[4] For Count 2, CSP, the State referred the jury to the two-minute-and-twenty-nine second video timestamped at 2:33:10 a.m. showing Defendant masturbating over Victim, rubbing himself against Victim's unclothed buttock, and seemingly penetrating Victim while saying, "[H]e's so tight." To prove Count 5, attempted CSP, the State pointed the jury to two videos. The first, timestamped at 2:37:09 a.m. with a duration of three minutes and forty-nine seconds, shows Defendant seemingly trying to penetrate Victim while being encouraged by the codefendant, but being unable to because he could not maintain an erection. The State also used this video to prove Count 6, CSC, as it shows Defendant rubbing himself against Victim's unclothed buttock. It is clear from review of the evidence that Defendant committed the CSP in the video timestamped at 2:33:10 a.m. a few minutes before the next video, timestamped at 2:37:09 a.m., shows Defendant committing the CSC and attempted CSP by touching himself while Victim shifted onto his side, then kneeling on the bed above Victim before touching and attempting

---

[4]On appeal, the State relies on video evidence not referenced in its closing arguments to reason that Defendant's conduct was distinct. The video relied upon in their appellate briefing to argue that Defendant's conduct is not unitary was evidence relied upon at trial to prove Count 1, a separate count of CSP by anal penetration. The jury found Defendant not guilty of Count 1. Again, we remind counsel that in conducting our analysis, we focus on the State's presentation at trial and not its argument on appeal. *See Lorenzo*, 2024-NMSC-003, ¶ 11 (concluding conduct was unitary based on the state's legal theory presented in its closing arguments at trial and not the state's argument on appeal).

to penetrate Victim again. *See Phillips*, 2024-NMSC-009, ¶ 32 (concluding that an approximate two-minute break between acts of battery is significant when analyzing indicia of distinctness); *see also Herron*, 1991-NMSC-012, ¶ 15 (explaining that "movement or repositioning of the victim between penetrations tends to show separate offenses"). The acts forming the basis for the CSP charged in Count 2 are sufficiently distinct from the later acts of attempted CSP charged in Count 5 and the CSC charged in Count 6.

{22}    Next, although the video timestamped at 2:37:09 a.m. was used as proof for both Count 5, attempted CSP, and Count 6, CSC, the State also referenced a second video to prove the attempted CSP. That video, timestamped at 2:40:12 a.m. and lasting one minute and one second, shows Defendant attempting to penetrate Victim while there is a substance on Victim's buttock that is not visible in the earlier videos. While both Defendant and the codefendant testified that the substance on Victim's buttock is lotion from the motel, Defendant testified that the codefendant got it, while the codefendant testified that it was Defendant who got it. Even with contradictory testimony as to who obtained the lotion, both parties testified that someone applied lotion to Victim in a moment not captured on video in between the acts shown in the two videos. Moreover, the codefendant reached down to touch Defendant's penis at the end of the first video, before lotion is seen on Victim in the second video, further separating the acts of CSC and attempted CSP. *See Sena*, 2020-

NMSC-011, ¶ 56 (concluding that acts of CSP and CSC were not unitary when one happened before the other and the conduct in committing each was separate and distinct). The State's reliance on the second video to prove Count 5, attempted CSP, that shows acts distinct from those used to prove Count 6, CSC, gives the jury "independent factual bases" for each offense. *See Franco*, 2005-NMSC-013, ¶ 7 (internal quotation marks and citation omitted).

{23}    Therefore, the conduct underlying Defendant's convictions for CSP, attempted CSP, and CSC is not unitary and Defendant's convictions do not violate his right to be free from double jeopardy.

**2.    Conspiracy to Commit CSP and CSP**

{24}    Defendant next argues that his right to be free from double jeopardy was violated because he was convicted of Count 4, conspiracy to commit CSP aided and abetted by another; and Counts 2 and 3, CSP aided and abetted by another based on unitary conduct. The parties agree that "conspiracy is typically treated separately from the substantive offense," for double jeopardy purposes, *see State v. Silvas*, 2015-NMSC-006, ¶ 22, 343 P.3d 616, but Defendant relies on our Supreme Court's narrow exception to this general rule that is applied when a jury is asked to infer a conspiracy based on a "single moment in time" that proves both the conspiracy and the underlying crime. *See id.* ¶ 10.

{25} The State argues that the conduct underlying Defendant's convictions is distinct and Defendant did not fully develop a double description argument for these convictions, instead stating only generally that he was convicted twice for the same unitary conduct in violation of double jeopardy. Although we have no duty to review undeveloped arguments, *see Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076, based on our review of the record, it is clear that the conduct the State relied upon when proving that Defendant committed conspiracy and each count of CSP was sufficiently distinct.

{26} First, to prove conspiracy, the State was required to establish that "[D]efendant and another person by words or acts agreed together to commit criminal sexual penetration when aided or abetted by another," and intended to commit CSP. *See* § 30-28-2. In its closing arguments, the State argued that collectively the video evidence demonstrates a pattern of Defendant and the codefendant agreeing to commit CSP. The State also referred the jury to the video timestamped at 2:20:38 a.m. where the codefendant tells Defendant that Victim is "waiting for you," Defendant's testimony that he understood the codefendant wanted Defendant to perform sexual acts on Victim, and a video timestamped at 2:25:57 a.m. where Defendant undresses while he and the codefendant discuss how to position Victim, the codefendant says, "Fuck him, rape him," and Defendant smiles before performing fellatio on Victim. Then, to prove the intent element of

conspiracy, the State referenced the "numerous videos where there has been penetration and you know that in order for them to have done it, they must have intended for that to happen."

{27} Next, to prove both counts of CSP when aided or abetted by another, the State had to prove that "[D]efendant caused [Victim] to engage in anal intercourse," and "[D]efendant caused [Victim] to engage in fellatio," while "[D]efendant acted with the help or encouragement of one or more persons." To prove that Defendant acted with the help or encouragement of another when causing Victim to engage in anal intercourse, the State argued that "we know [Defendant] was acting while he was being encouraged by the codefendant . . . entire time." To prove that Defendant acted with the help or encouragement of another when causing Victim to engage in fellatio, the State pointed to the video timestamped at 2:25:57 a.m. where the codefendant can be heard encouraging Defendant to "fuck him, rape him," before Defendant smiled and performed fellatio on Victim.

{28} Although the State referenced the video timestamped at 2:25:57 a.m. when proving both conspiracy to commit CSP and CSP by fellatio, the State separately relied on the video timestamped at 2:20:38 a.m. and a general pattern of agreement to prove conspiracy. Our Supreme Court has held that convictions for conspiracy to commit a crime and the crime itself violate double jeopardy if the state relies on the same momentary act to prove both the crime and the conspiratorial agreement and

asks the jury to infer conspiracy from that singular act. *Silvas*, 2015-NMSC-006, ¶¶ 10, 20-21. But here, the State provided additional video evidence showing distinct conduct upon which the jury could base separate convictions for conspiracy to commit CSP and CSP aided or abetted by another, contrary to Defendant's argument that the jury had to "infer intent to act together by committing CSP together." *See Franco*, 2005-NMSC-013, ¶ 7 ("The proper analytical framework is whether the facts presented at trial establish that the jury reasonably could have inferred independent factual bases for the charged offenses." (internal quotation marks and citation omitted)).

{29}    Because the State relied on distinct acts, we conclude that Defendant's conduct is not unitary. *See Swafford*, 1991-NMSC-043, ¶ 28 (concluding that "if the conduct is separate and distinct, [the] inquiry is at an end"). Therefore, Defendant's convictions for Count 4, conspiracy to commit CSP, and Counts 2 and 3, CSP when aided or abetted by another, do not violate his right to be free from double jeopardy.

**3.    Voyeurism and CSP**

{30}    Defendant's final double description challenge argues that his convictions for CSP in Counts 2 and 3 and voyeurism in Count 7 overlap to violate his right to be free from double jeopardy. The State argues that the convictions do not overlap and the Legislature intended to permit separate punishments for each. Even if we assume without deciding that Defendant's conduct underlying his convictions for voyeurism

and CSP was unitary, *see State v. Bahney*, 2012-NMCA-039, ¶ 21, 274 P.3d 134, the convictions do not overlap to violate double jeopardy under step two of our double description analysis.[5] Under step two, we ask "whether the Legislature intended to impose multiple punishments for the unitary conduct" in separate statutes. *Id.* ¶ 20 (internal quotation marks and citation omitted). When statutes "provide[] alternative methods by which a defendant can violate the statute," we apply a modified *Blockburger* test to compare the statutory language with the state's theory of a case based on the charging documents, jury instructions, testimony, and arguments made at trial to "establish whether the same evidence supported a defendant's convictions under both statutes." *Begaye*, 2023-NMSC-015, ¶¶ 18, 23-24 (internal quotation marks and citations omitted).

{31}     Pursuant to Section 30-9-20(A), voyeurism consists of

> intentionally using the unaided eye to view or intentionally using an instrumentality to view, photograph, videotape, film, webcast or record the intimate areas of another person without the knowledge and consent of that person:

---

[5]*See Porter*, 2020-NMSC-020, ¶ 13 n.1 ("We acknowledge that this Court previously assumed without deciding that conduct was unitary and proceeded to analyze legislative intent, the second prong of the *Swafford* analysis, in *State v. Carrasco*, 1997-NMSC-047, ¶ 23, 124 N.M. 64, 946 P.2d 1075. Although permissible, such an analysis should be the exception rather than the rule because determining what the Legislature intended—or perhaps more accurately, what the Legislature most likely would have intended had it contemplated the potential overlap between particular statutes—is a task for which there is no simple test." (alteration, internal quotation marks, and citation omitted)).

> (1) while the person is in the interior of a bedroom, bathroom, changing room, fitting room, dressing room or tanning booth or the interior of any other area in which the person has a reasonable expectation of privacy; or

> (2) under circumstances where the person has a reasonable expectation of privacy, whether in a public or private place.

CSP is "the unlawful and intentional causing of a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration, to any extent and with any object, of the genital or anal openings of another," and CSP in the second degree involves "the use of force or coercion when the perpetrator is aided or abetted by one or more persons." Section 30-9-11(A), (E)(4). Both statutes are vague as they do not clearly prescribe multiple punishments and both provide alternative methods by which they could be violated, thus we proceed with considering the State's theory of the case under the modified *Blockburger* test. *See Begaye*, 2023-NMSC-015, ¶ 24.

{32} Defendant asserts that the State blended the crimes of CSP and voyeurism when it argued that Defendant committed voyeurism by cooperating with the codefendant's recordings of intimate areas of Victim's body. However, the charging documents and jury instructions required the State to prove different acts. Count 7, voyeurism, required proof that "[D]efendant intentionally used the unaided eye or an instrumentality to view, photograph, videotape, film, webcast or record intimate

areas of [Victim],"[6] and Counts 2 and 3, CSP, required proof that Defendant "unlawfully and intentionally cause[d Victim] to engage in anal intercourse" and "fellatio," "with the help or encouragement of one or more persons." The video evidence relied on in the State's closing argument further establishes that the two offenses do not overlap. *See Begaye*, 2023-NMSC-015, ¶ 22 (describing that the modified *Blockburger* test considers if "the statute, as applied by the [s]tate in a given case, overlaps with other criminal statutes so that the accused is being punished twice for the same offense" (emphasis, internal quotation marks, and citation omitted)). Offenses overlap and violate double jeopardy when the state "direct[s] the jury to the same act . . . as the basis to convict for both crimes." *Id.* ¶ 29 (internal quotation marks and citation omitted). In *Begaye*, the state used evidence that the defendant broke a window to prove both unauthorized entry for the crime of burglary and the entry without permission elements of the crime of breaking and entering. *Id.* ¶ 35. However, here the State referenced the video evidence in general to show that Defendant can be seen using his eyes to look at intimate parts

---

[6]The State notes that "[i]t is uncontested on appeal that the State's legal theory was based on the 'instrumentality' that is, the cell phone camera," in the instruction for voyeurism. The charging documents also indicted Defendant for using an instrumentality. However, at trial the State conceded, "I think we can all agree here that [Defendant] was not the one filming the intimate parts of [Victim]; however, he did use his unaided eye without the use of a phone to look at the intimate parts of [Victim]." Regardless, the voyeurism and CSP charges do not violate double jeopardy under a double description analysis.

of Victim while Victim was unconscious to prove voyeurism in Count 7, and referred to specific video clips showing specific acts of penetration and fellatio to prove CSP. Because the State relied on separate theories and separate conduct to support charges for voyeurism and CSP, Defendant's voyeurism and CSP convictions do not overlap. *See State v. Serrato*, 2021-NMCA-027, ¶¶ 19-20, 493 P.3d 383 (concluding two charges overlapped and violated double jeopardy when the state's legal theory "was based upon the same conduct and under the same theory").

{33} Therefore, we conclude that the Legislature intended to permit punishment for Defendant's convictions of both CSP and voyeurism such that these convictions do not violate double jeopardy.

**II.    Duress**

{34} Defendant next asks this Court to reverse his convictions and remand for a new trial because the district court erred in denying his requests for a jury instruction on duress pursuant to UJI 14-5130 NMRA. The State argues that duress should not be available in cases of sexual assault, and even if available, Defendant did not make a prima facie showing of duress. Because we conclude that the district court properly denied Defendant's request for a duress instruction, we decline to consider the State's argument that duress should not apply in cases of sexual assault.

{35} We review whether a defendant was entitled to a duress instruction de novo. *See State v. Boyett*, 2008-NMSC-030, ¶ 12, 144 N.M. 184, 185 P.3d 355 (providing

that whether a defendant is entitled to an instruction on their theory of the case is a mixed question of law and fact reviewed de novo). "By asserting duress, the accused admits performing the crime but seeks excusal from punishment on grounds that the action was compelled by an imminent threat of serious harm to the accused or another." *State v. Ortiz*, 2020-NMSC-008, ¶ 12, 468 P.3d 833. "[D]uress is a defense available in New Mexico except when the crime charged is a homicide or a crime requiring intent to kill." *Esquibel v. State*, 1978-NMSC-024, ¶ 8, 91 N.M. 498, 576 P.2d 1129, *overruled on other grounds by State v. Wilson*, 1994-NMSC-009, ¶ 6, 116 N.M. 793, 867 P.2d 1175; *see* UJI 14-5130. A defendant seeking a duress instruction has the burden of making a prima facie case by showing three elements: "(1) that the defendant committed the crime under threats; (2) that the defendant feared immediate great bodily harm to himself or another person if he did not commit the crime; and (3) that a reasonable person would have acted in the same way under the circumstances." *State v. Duncan*, 1991-NMSC-010, ¶ 4, 111 N.M. 354, 805 P.2d 621; *Esquibel*, 1978-NMSC-024, ¶ 9 (placing the burden on the defendant to establish a prima facie case). "If the evidence supports a theory of the case, a defendant is entitled to instruction on that theory." *State v. Castrillo*, 1991-NMSC-096, ¶ 4, 112 N.M. 766, 819 P.2d 1324. But, whether a person acted reasonably "requires a court to determine whether, as a matter of law, sufficient evidence under the circumstances of the case warranted submission to the jury." *Id.* ¶ 14.

{36} In this case, even if Defendant had admitted to committing all of the crimes charged under threat,[7] and we assume without deciding that Defendant was in fear of imminent great bodily harm because he claimed that the codefendant threatened him, Defendant's actions were not reasonable. When reviewing the request for a duress instruction, "[f]ear of immediate harm must be viewed together with whether a reasonable person in the defendant's position would have acted the same way under the circumstances." *Castrillo*, 1991-NMSC-096, ¶ 15. "[A] reasonable person would not violate the law if legal alternatives are available." *Id.*; *see State v. Perry*, 2009-NMCA-052, ¶ 41, 146 N.M. 208, 207 P.3d 1185 ("The keystone of the duress analysis is that the defendant must have no alternative—either before or during the event—to avoid violating the law." (alteration, internal quotation marks, and citation omitted)).

---

[7]Defendant denied committing CSP by anal penetration. Therefore, Defendant was not entitled to a duress instruction on this count. *See Ortiz*, 2020-NMSC-008, ¶ 26 ("[I]t is a necessary and immovable presupposition of duress that the accused admit performing the criminal act with which [they are] charged."). However, Defendant did not deny the remaining counts that can be seen in video evidence. The State argues that since Defendant was not entitled to a duress instruction on some counts because he did not admit to them, it would mislead the jury to instruct on duress for the other admitted counts. *See State v. Nieto*, 2000-NMSC-031, ¶ 17, 129 N.M. 688, 12 P.3d 442 ("A trial court's refusal to submit a jury instruction is not error if the submission of the instruction would mislead the jury by promoting a misstatement of the law."). Regardless of whether instructing on duress for only some counts charged could have mislead the jury, we conclude that Defendant did not make a prima facie showing of duress and thus was not entitled to a duress instruction on any counts.

{37}     Defendant repeatedly testified that he was confused, scared, helpless, and did not want to be involved in the situation. Defendant testified that earlier in the night he thought the codefendant had "creepo status" after the codefendant came up to him without shoes on in the motel parking lot. However, Defendant testified that later when the codefendant knocked on Defendant's door, he disregarded his initial fears of the codefendant and voluntarily joined him for a drink on the motel balcony instead of rejecting his offer and staying in his own room. Defendant also testified that he then voluntarily entered the codefendant and Victim's room when the codefendant told him to, despite his apparent fears. Additionally, at no point did Defendant attempt to call the police or message anyone, despite having his cell phone and laptop with him. In fact, video evidence shows Defendant using his phone to watch pornography during the duration of the events in question, and the search of Defendant's phone during investigation found thirty-six searches for pornography made during the same time period. Defendant even testified that he attempted to make audio recordings on his phone, yet did not attempt to call emergency services. Perhaps most significant is that Defendant did not take advantage of opportunities to escape and seek help, even though Defendant testified that he tried to get himself out of the situation by asking the codefendant if he could go get lube, go to the bathroom, and go take a shower as excuses to go back to his motel room. Defendant's motel room, where Defendant's friend was also staying, was directly next door to

the codefendant's room. And although the codefendant testified that he closed his motel room door and it remained closed, Defendant testified that he told police the door was cracked open and he was going to try to escape through it. Defendant even testified that the codefendant fell over multiple times throughout the night. During the first fall, Defendant did not attempt to flee after the codefendant stopped him from walking towards the door. Then, instead of trying to escape the second time the codefendant fell over, Defendant can be heard asking the codefendant if he is alright in the video timestamped at 4:09:16 a.m., and admits he only left the room later after the codefendant fell over for a third time.

{38} Given all of the evidence presented, Defendant did not make a prima facie showing that he acted as a reasonable person would in this scenario because he chose to enter the codefendant and Victim's room despite his fears and concerns, at no point attempted to seek or call for help during the three-hour assault even though he had access to his phone and his friend was in the room next door, and made no attempt to flee the situation despite having opportunities to do so.[8] *See State v.*

---

[8]Defendant argues that the district court erred in making a determination on the reasonableness of his conduct as reasonableness is for the jury to assess. However, it is clear that a defendant bears "the burden to present a prima facie case of duress warranting its submission to the jury." *Castrillo*, 1991-NMSC-096, ¶ 5. The district court judge then properly determined whether Defendant's conduct was reasonable such that a duress instruction was warranted. *See State v. Swick*, 2012-NMSC-018, ¶¶ 64-65, 279 P.3d 747 (holding that the district court properly denied a defendant's request for a self-defense instruction when it found that the defendant's response to the threat was unreasonable).

*LeMarr*, 1971-NMSC-082, ¶¶ 12, 17, 83 N.M. 18, 487 P.2d 1088 (holding that a defendant was not entitled to a duress instruction when testimony revealed they had opportunities to escape but did not try to); *Castrillo*, 1991-NMSC-096, ¶ 18 (concluding that a defendant had reasonable alternatives to committing a crime including calling the police and avoiding the situation and thus was not entitled to a duress instruction). Defendant had alternative courses of action available to him, but instead chose to cooperate with the codefendant to commit the acts charged. *See Castrillo*, 1991-NMSC-096, ¶ 15 ("[A] reasonable person would not violate the law if legal alternatives are available.").

{39} Therefore, Defendant did not meet his burden of making a prima facie showing of duress warranting submission to the jury, *see Esquibel*, 1978-NMSC-024, ¶ 9, and we conclude that the district court did not err in denying Defendant's requests for a jury instruction on duress.

**CONCLUSION**

{40} For the foregoing reasons, we affirm.

{41} **IT IS SO ORDERED.**

_____
**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

_____
**MEGAN P. DUFFY, Judge**

_____
**KATHERINE A. WRAY, Judge**